**KAPLAN FOX & KILSHEIMER LLP**
Lawrence King (SBN 206423)
*lking@kaplanfox.com*
Mario M. Choi (SBN 243409)
*mchoi@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

**KAPLAN FOX & KILSHEIMER LLP**
Maia C. Kats (to be admitted *pro hac vice*)
*mkats@kaplanfox.com*
6109 32nd Place, NW
Washington, DC 20015
Telephone:  (202) 669-0658

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs Richa Arora, Randy Clinton,*
*and Walter Johnston and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHA ARORA, RANDY CLINTON, *and* WALTER JOHNSTON, *individually and on behalf of all others similarly situated*, | Case No. 3:19-cv-02414 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **Demand for Jury Trial** |
| GNC HOLDINGS, INC., | |
| Defendant. | |

Plaintiffs Richa Arora, Randy Clinton, and Walter Johnston (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint against GNC Holdings, Inc. ("Defendant" or "GNC"), and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

**NATURE OF THE ACTION**

1.      This action seeks to recover for injuries suffered by Plaintiffs and all others similarly situated (the "Class," as defined below) as a direct result of GNC's unlawful, deceptive, and misleading labeling, marketing, and sale of GNC proprietary brand dietary supplements ("GNC proprietary brand supplements" or the "Supplements"), including, but not limited to, GNC Men's Prostate Formula Dietary Supplement ("Prostate Health"), GNC Diabetic Support Dietary Supplement ("Diabetic Support"), GNC Preventive Nutrition Healthy Blood Pressure Formula Supplement, GNC Women's Ultra Mega Active Supplement, and GNC Mega Men Healthy Testosterone ("Mega Men Performance").

2.      Plaintiffs assert three types of claims. First, they assert "unlawful" claims because GNC marketed, labeled, and sold misbranded Supplements in violation of the Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301 *et seq.* (the "FFDCA" or the "Act"), as amended by the Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103–417, 108 Stat. 4325 ("DSHEA"), as well as the regulations implementing the FFDCA and DSHEA. These requirements are fully incorporated into California's Sherman Food, Drug, and Cosmetic Law, CAL. HEALTH & SAFETY CODE § 109875 *et seq.* ("Sherman Law"), and actionable pursuant to the unlawful prong of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL").

3.      Second, Plaintiffs assert "misleading and deceptive" marketing claims because GNC labeled, marketed, and sold the Supplements in a manner that is unfair, deceptive, and untrue in violation of California's UCL and New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

4.      Third, Plaintiffs assert common law claims for unjust enrichment.

5.      With respect to Plaintiffs' "unlawful" claims, GNC is prohibited from labeling, marketing, or selling dietary supplements bearing claims that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, [or that] characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function" (known as "structure/function claims"), unless the label carries a prominent disclaimer on each panel bearing such claims. *See* 21 U.S.C. §§ 321(g)(1), 331(d), 343(r)(1)(B), 343(r)(6), 355(a); 21 C.F.R. § 101.93(d) ("On product labels and in labeling (e.g., pamphlets, catalogs), the disclaimer shall appear on each panel or page where there [is a structure/function claim].").

6.      The disclaimer must be prominent and bolded, and it must read:

> These statements have not been evaluated by the Food and Drug
> Administration. This product is not intended to diagnose, treat,
> cure, or prevent any disease.

21 U.S.C. § 343(r)(6)(C); *see also* 21 C.F.R. § 101.93(b)-(e).

7.      Because GNC Supplements do not bear the required disclaimers on all panels with structure/function claims, and/or the disclaimer lacks the prominence required, the Supplements are misbranded and unlawful. 21 U.S.C. § 343(r)(1)(B), (r)(6); 21 C.F.R. § 101.93(d).

8.      GNC Supplements also qualify as "drugs" under the FFDCA since GNC markets them with structure/function claims but does not include the disclaimers. *See* 21 U.S.C. §§321(g)(1), 343(r)(6). In order to avoid being regulated as drugs under the FFDCA, dietary supplements bearing structure/function claims must comply with the disclaimer requirements. *Id.*

9.      Drugs require pre-market approval from the federal Food & Drug Administration ("FDA"). 21 U.S.C. §§ 331(d), 355(a).

10.     Upon information and belief, GNC lacks pre-market approval for its Supplements, rendering them not just misbranded but unapproved drugs.

11.     Misbranded dietary supplements and/or unapproved drugs are unlawful and cannot be sold legally. 21 U.S.C. §§ 331, 333. Under Section 110760 of the Sherman Law, they have no economic value and are worthless.

12.     With respect to Plaintiffs' "deceptive and misleading" claims, GNC deceptively labels, markets, and sells the Supplements as having been subjected to the FDA's pre-market

approval process; and/or intended to prevent, cure, or treat a disease or health-related condition linked to disease.

13.     GNC compounds its deception by coupling its omission of the disclaimer with misleading phrases like "clinically studied," "scientifically designed," "physician formulated," or "physician endorsed," and with medical symbols, and/or by referencing diseases and/or conditions equated with disease in its marketing of the Supplements.

14.     Plaintiffs and the members of the Class reviewed and reasonably relied on GNC's Supplement labels and packaging when purchasing them and were misled by GNC's marketing.

15.     Had Plaintiffs known that the Supplements were misbranded, unlawful, lacked government review and approval, and/or were not intended to treat, cure, or prevent any disease (that is, were not intended for therapeutic purposes), Plaintiffs would not have purchased them.

16.     Owing to their reliance on GNC's deceptive labeling, marketing, and sales of the Supplements, Plaintiffs and the members of the Class purchased GNC Supplements believing them to have characteristics and qualities that they do not have. Plaintiffs and the members of the Class have been injured because they would not have purchased the Supplements or paid as much for them had they known the truth.

**PARTIES**

**A.     Plaintiffs**

17.     Plaintiff Richa Arora is a resident of San Francisco, California.

18.     During the relevant class period, Ms. Arora purchased GNC Prostate Health Supplement for her father, GNC Women's Ultra Mega Active Supplement for herself, and other Supplements, from a GNC location at the Northpoint Shopping Center, 350 Bay Street, San Francisco, California 94133, in addition to other purchases.

19.     Ms. Arora believed that the Supplements were lawful, correctly branded, subject to a governmental review and approval process, and had therapeutic value, including that they were intended to prevent or treat disease, including prostate disease.

20.     Ms. Arora relied on GNC's marketing of the Supplements, both implied and express, when making her purchases.

21.     Ms. Arora paid more for, and purchased more of, GNC Supplements than she would have had she known the truth about them.

22.     Ms. Arora was injured in fact and lost money as a result of Defendant's improper and unlawful conduct.

23.     If Ms. Arora knew that GNC's marketing and sale of the Supplements was lawful, truthful, and non-misleading, she would purchase the Supplements in the future. At present, however, Ms. Arora cannot purchase the Supplements because she cannot be confident that they are lawful and that their labeling is truthful and non-misleading.

24.     Plaintiff Randy Clinton is a resident of Tracy, California.

25.     During the relevant class period, Mr. Clinton purchased GNC Diabetic Support Supplement, and other Supplements, from a GNC location at the West Valley Mall, 3200 North Naglee Road, Tracy, California 95304.

26.     Mr. Clinton believed that the Supplements were lawful, correctly branded, subject to a governmental review and approval process, and had therapeutic value, including that they were intended to prevent or treat disease, including diabetes.

27.     Mr. Clinton relied on GNC's marketing of the Supplements, both implied and express, when making his purchases.

28.     Mr. Clinton paid more for, and purchased more of, GNC Supplements than he would have had he known the truth about them.

29.     Mr. Clinton was injured in fact and lost money as a result of Defendant's improper and unlawful conduct.

30.     If Mr. Clinton knew that GNC's marketing and sale of Supplements was lawful, truthful, and non-misleading, he would purchase the Supplements in the future. At present, however, Mr. Clinton cannot purchase the Supplements because he cannot be confident that they are lawful and that their labeling is truthful and non-misleading.

31.     Plaintiff Walter Johnston is a resident of Jamestown, New York.

32.     During the relevant class period, Mr. Johnston purchased GNC Mega Men Performance and Vitality Mega Vitapaks, among other Supplements, from a GNC location in Chautauqua Mall, 318 East Fairmont Avenue, Lakewood, New York 14750, and in Pennsylvania.

33.     Mr. Johnston believed GNC's representations that the Supplements had therapeutic value with respect to his prostate, circulation, and overall medical health.

34.     In purchasing the Supplements, he relied on GNC's representations that the Supplements had therapeutic value with respect to his prostate, circulation, and overall medical health.

35.     Mr. Johnston purchased more of, or paid more for, GNC Supplements than he would have had he known the truth about the products.

36.     Mr. Johnston was injured in fact and lost money as a result of Defendant's improper and unlawful conduct.

37.     If Mr. Johnston knew GNC Supplement labels and advertising were lawful, truthful, and non-misleading, he would purchase GNC Supplements in the future. At present, however, Mr. Johnson cannot purchase the products because he cannot be confident that the sales, labeling, and advertising of the products are, and will be, lawful, truthful, and non-misleading.

**B.    Defendant**

38.     Defendant GNC Holdings, Inc., is a public corporation organized and existing under the laws of the State of Delaware.

39.     Defendant's principal place of business is at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

40.     Defendant owns, operates, and franchises retail locations under the name "GNC." Approximately 2,989 of 4,026 GNC retail stores in the United States are owned and managed by GNC. There are 269 company-owned stores in California.

41.     Both with respect to corporate-owned retail stores and franchises, Defendant directs and requires that all retail locations display and offer for sale GNC Supplements, and directs all marketing and labeling thereof.

1

**JURISDICTION**

2          42.     This Court has original subject-matter jurisdiction over this proposed class action

3   pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, which provides

4   for the original jurisdiction of federal district courts over "any civil action in which the matter in

5   controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a

6   class action in which . . . any member of a class of plaintiffs is a citizen of a State different from

7   any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff Arora is a citizen of the State of

8   California and Defendant is a citizen of the States of Delaware and Pennsylvania, at least one

9   member of the plaintiff Class is a citizen of a state different from Defendant. Further, Plaintiffs

10  allege the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of

11  interest and costs. Finally, Plaintiffs allege "the number of members of all proposed plaintiff

12  classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

13         43.     This Court has personal jurisdiction over Defendant for several reasons, including

14  that GNC has continuous and systematic contacts with California, in part because approximately

15  269 Defendant-owned GNC stores are located in California; and Plaintiffs' claims arise out of

16  Defendant's conduct within California, in part because Plaintiffs Arora and Clinton purchased

17  GNC Supplements within California based on Defendant's unlawful marketing and dissemination

18  of false and misleading information about them.

19

**VENUE**

20         44.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial

21  part of the events or omissions giving rise to Plaintiff Arora's claims occurred within this District,

22  including her purchases of Supplements based on GNC's unlawful and deceptive marketing.

23

**INTRADISTRICT ASSIGNMENT**

24         45.     Assignment to the San Francisco Division is appropriate under Civil Local Rule 3-

25  2(c) and (d) because a substantial part of the events or omissions which gave rise to Plaintiff

26  Arora's claims occurred within San Francisco County, including Ms. Arora's purchases of GNC

27  Supplements based on GNC's unlawful and deceptive marketing.

28

**FACTUAL ALLEGATIONS**

46.     GNC, along with its subsidiaries, is the leading retailer of health, wellness, and performance products, including dietary supplements, in the world. GNC sells both proprietary brand dietary supplements and third party brands and has approximately 9,000 locations worldwide, with 4,000 in the United States.

47.     The dietary supplements business is highly profitable. For 2018, GNC reported earnings of approximately $3 billion.

48.     GNC's dietary supplement business has been the subject of multiple investigations and claims of consumer deception and fraud.

49.     In February 2015, for example, then-New York Attorney General Schneiderman ordered GNC to cease and desist its practice of deceptively labeling dietary supplements. The Office of the New York Attorney General and GNC reached an agreement in September 2016, which required GNC to test its supplements more robustly to ensure the authenticity of ingredients and accuracy of labeling claims.[1]

50.     In October 2015, the Attorney General of Oregon filed a lawsuit against GNC alleging that the company knowingly sold products containing picamilon and BMPEA, ingredients banned by the FDA as unsafe.[2]

51.     In February 2017, Fox Broadcasting Company rejected GNC advertisements scheduled to run during Superbowl LI because the National Football League Players' Association placed GNC on its blacklist—warning against business relations with GNC—for selling products that contain substances banned by the National Football League.[3]

---

[1] *A.G. Schneiderman Announces Major Nationwide Agreement with NBTY, Herbal Supplement Maker for Walgreens and Walmart*, AG.NY.GOV (Sept. 28, 2016), https://on.ny.gov/2W12qQF.

[2] Sara Germano & Serena Ng, *Oregon Sues GNC, Alleging Supplements Contained Illegal Ingredients*, WALL STREET J., Oct. 22, 2015, *available at* https://on.wsj.com/2GvBVwo.

[3] Alexandra Bruell, *GNC's Super Bowl Ad Rejected by NFL*, WALL STREET J., Jan. 31, 2017, *available at* https://on.wsj.com/2vh0w2J.

**A.    GNC's Unlawful Labeling, Marketing, and Sale of Its Proprietary Brand Supplements.**

52.    Under section 201(g)(1)(B) and (g)(1)(C) of the FFDCA (codified at 21 U.S.C. § 321(g)(1)(B) and (g)(1)(C)), a "drug" is defined, in part, as an "article[] intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals," *or* an "article[] (other than food) intended to affect the structure or any function of the body of man or other animals."

53.    New "drugs" require approval by the FDA prior to placement on the market. *See* 21 U.S.C. §§ 331(d), 355(a).[4]

54.    Section 403(r)(6) of the FFDCA (codified at 21 U.S.C. § 343(r)(6)), creates an exemption from drug treatment—that is, an exemption to the pre-approval requirement—for supplements "intended to affect the structure or function" of the body *provided* that they carry prominent FDA-disclaimers. 21 U.S.C. § 343(r)(6)(A), (C); *see also* 21 U.S.C. § 321(g)(1) ("A food, dietary ingredient, or dietary supplement for which a truthful and not misleading statement is made in accordance with section 343(r)(6) of this title is not a drug under [21 U.S.C. § 321(g)(1)(C)] solely because the label or the labeling contains such a statement."); 21 C.F.R. § 101.93(b)-(d).

55.    Disclaimers must read, "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." 21 U.S.C. § 343(r)(6); *see also* 21 C.F.R. § 101.93(c).

56.    The disclaimer requirement aligns with FDA's statement that "few dietary supplements have been the subjects of adequately designed clinical trials." *See* Regulations on

---

[4] *See also* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1001, 2000 WL 4559 (Jan. 6, 2000) ("Section 505 of the [FFDCA] (21 U.S.C. 355) requires that new drugs (see section 201(p) of the [FFDCA]) be shown to be safe and effective for their intended uses before marketing.").

Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1003, 2000 WL 4559 (Jan. 6, 2000).[5]

57.     Also, without the disclaimers, structure/function claims convey to consumers therapeutic drug claims, because it is "possible to describe almost all products intended to treat or prevent disease in terms of their effects on the structure or function of the body, without mentioning the disease itself." *See* 65 Fed. Reg. at 1005; *see also id.* at 1013 ("Most disease treatment or prevention claims, including claims about serious and life-threatening diseases, can be described in a manner that will be easily understood by consumers without express reference to a specific disease. . . . The distinction between implied and express disease claims is thus, in many cases, a semantic one that has little, if any, practical meaning to consumers.").

58.     Such marketing dangerously encourages consumers to self-treat for serious conditions without the benefit of a medical diagnosis or treatment. *Id.* at 1001, 1044-45.

59.     In short, the purpose of the disclaimer is to "make sure that consumers understand that structure/function claims are not reviewed by FDA prior to marketing, and to caution consumers that dietary supplements bearing such claims *are not for therapeutic uses.*" *Id.* at 1007 (emphasis added).

60.     The disclaimer must appear "on each panel or page" of a supplement label or package that bears a health-related claim, 21 C.F.R. § 101.93(d), and it must be prominent. 21 U.S.C. § 343(r)(6).

61.     As the FDA stated in 1997:

> The [FDA] rejects the comments that stated that repetition of the disclaimer on every panel or page where a statement made in accordance with section 403(r)(6) of the act appears is unnecessary. The agency concludes that to meet the statutory requirement that the disclaimer be "contained" within the statement, *the disclaimer must be within the same field of vision as the statement itself.* Because the agency concludes that the placement of the disclaimer anywhere on the same page or panel of labeling is equivalent to meeting the requirement of being "contained," each of the suggestions for the placement of a single disclaimer on a product

---

[5] *See also id.* at 1003 ("[M]any marketed supplements have not been the subjects of adequate studies to establish whether or not they are safe or effective, or the nature of the benefits they may provide.").

label (e.g., under the nutrition label, adjacent to the most prominent claim) would not provide an acceptable alternative.

Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements, 62 Fed. Reg. 49,859, 49,864-65 (Sept. 23, 1997) (emphasis added); *see also id.* at 49,864 ("FDA has evaluated the comments and concludes that the placement of the disclaimer on a panel other than where the statement is made would not meet the statutory requirement for the placement of the disclaimer. . . . Based on its experience with asterisks within the nutrition label, the agency concludes that consumers are accustomed to using asterisks on labels to associate two discrete pieces of important information *when they are in the same field of vision*." (emphasis added) (citation omitted)).

62.     In the same Final Rule, the FDA went on to state that:

> Statements provided for in section 403(r)(6) of the act are entirely voluntary. All required information must first be considered in designing labels. Moreover, the firm must consider that the disclaimer must be prominent as required by the statute. Therefore, there will be instances in which statements under section 403(r)(6) of the act should not be used on a label or in labeling because it is *not feasible* to accommodate both the required information and the statutory requirement for prominence for the disclaimer.

*Id.* at 49,865-66 (emphasis added).

63.     To be prominent, the disclaimer may not be crowded with non-required, or voluntary, information or imagery and additionally must use bolded font *at least* 1/16th of an inch in size. *See id.*; 21 C.F.R. § 101.93(e).

64.     Failure to abide by the disclaimer requirements renders non-compliant supplements misbranded, unapproved, and unlawful drugs under federal law. 21 U.S.C. §§ 321(g)(1), 331(d), 343(r)(6), 355(a).

65.     California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." CAL. HEALTH & SAFETY CODE § 110100.

66. GNC fails to abide by the disclaimer requirements in labeling and marketing its Supplements.

67. GNC's Diabetic Supplement, for example, lacks the required disclaimers.

68. GNC omits the disclaimer from the front panel of the packaging for GNC's Diabetic Supplement, or the side panel, despite the presence of structure/function claims on both panels. *See* Images 1-2 (with arrows pointing to front of package panels on one dimensional images of multi-panel labels).

Images 1-2





/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15    69.    Likewise, GNC omits the disclaimer from the front of package label of the Diabetic

16 Supplement bottle label. Instead, a non-compliant disclaimer appears on the back panel of the

17 bottle, where, even there, it is rendered non-prominent by a variety of voluntary claims. *See*

18 Image 3.

19                                      Image 3

20

21

22

23

24                        

25

26

27

28

70.     GNC's violation of the disclaimer requirement renders the labeling, marketing, and sale of GNC Supplements misbranded and unlawful.

71.     GNC's failure to include the mandatory disclaimer also renders its Supplements unlawful drugs. New "drugs" requires pre-approval by the FDA prior to marketing and sale, *see* 21 U.S.C. §§ 331(d), 355(a), which pre-approval GNC has not obtained prior to its sales and marketing of the Supplements.[6]

**B.      GNC's Labeling and Packaging Claims Are Deceptive and Misleading.**

72.     As described above, GNC markets and labels its Supplements as correctly branded, lawful, FDA-approved, and/or of therapeutic value (intended to prevent or treat disease or conditions associated with disease), and does so deceptively and misleadingly.

73.     GNC compounds its deceptive marketing with authoritative sounding embellishments like "clinically studied," "scientifically formulated," and "physician endorsed," and by implying therapeutic properties by referencing diseases or conditions linked to disease.

74.     GNC's website embraces the deception. For example, one verified purchaser of Diabetes Support posted, "[k]eeps [my] glucose and A1C in check." Another stated that "GNC Mega Men Diabetic Support . . . has help [sic] in keeping my sugars down." And another posted that it helps "stabilize" sugars.[7]

75.     GNC's omission of the mandatory disclaimers from Supplement panels is systemic. *See, e.g.*, Images 4-9 (with arrows pointing to front panels lacking disclaimers).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] *See also* 65 Fed. Reg. at 1001.

[7] *GNC Mega Men® Diabetic Support*, WWW.GNC.COM (2019), http://bit.ly/2XCiFUP.

Images 4-9







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28















CLASS ACTION COMPLAINT

76.     By contrast, Target brand proprietary "Up & Up" dietary supplements prominently display the mandated disclaimer on the front panel of their labels and elsewhere where structure/function claims appear. Target's disclaimers are also not so crowded by voluntary statements and imagery as to lose prominence. *See* Image 10 (arrow pointing to bolded, set off, disclaimer on front panel).

Image 10



**ECONOMIC INJURY**

77.     When purchasing the GNC Supplements, Plaintiffs read and relied on GNC's labeling and marketing claims.

78.     Based on the Supplements' labeling, Plaintiffs believed the GNC Supplements had the aforementioned characteristics and benefits, including that they were lawful.

79.     As a result, Plaintiffs received GNC Supplements that lacked the characteristics and/or benefits that they reasonably believed the products had.

80.     Plaintiffs would not have purchased the GNC Supplements, purchased as many of them, and/or paid as much for them absent these sales, misrepresentations, and labeling and marketing practices.

81.     Plaintiffs lost money as a result of GNC's unlawful and deceptive and misleading conduct because Plaintiffs did not receive the products for which they believed they paid.

82.     Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amounts they paid for the GNC Supplements they purchased.

83.     Plaintiffs would purchase the GNC Supplements again in the future should they have the characteristics and/or the benefits marketed and labeled.

84.     By engaging in unlawful sales and/or deceptive and misleading marketing, GNC reaped, and continues to reap, increased sales and profits, including with respect to its competitors.

85.     GNC knows that the qualities and characteristics it labels and markets, as well as its omissions, are material to a consumer's decision to purchase its Supplements.

86.     GNC deliberately cultivates these misperceptions through its marketing and labeling of its Supplements. Indeed, GNC relies and capitalizes on consumer misconceptions about its Supplements.

## CLASS ACTION ALLEGATIONS

87.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of three proposed subclasses defined as follows:

**The California Subclass**. All persons residing in the State of California who purchased one or more GNC proprietary brand supplements within the applicable limitations period.

**The New York Subclass**. All persons who purchased one or more of GNC proprietary brand supplements in the State of New within the applicable limitations period.

**The Nationwide Subclass.** All persons in the United States who purchased one or more GNC proprietary brand supplements within the applicable state limitations periods.

88.     Collectively, the California, New York, and Nationwide Subclasses constitute the "Class."

89.     Excluded from the Class are: (a) Defendant; (b) Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (c) governmental entities; (d) the Court, the Court's immediate family, and the Court staff; and (e) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

90.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove the elements in individual actions alleging the same claims.

91.     **Numerosity**. The Class consists of many thousands of persons throughout the states of California, New York, and nationwide. The Class is so numerous that joinder of all members is impracticable, and the disposition of each of the Class's claims in a class action will benefit the parties and the Court.

92.     **Commonality and Predominance**. Common questions of law and fact predominate over any questions affecting only individual Class members. These common questions have the capacity to generate common answers that will drive resolution of this action. These common questions include whether:

  a. GNC committed the conduct alleged herein;

  b. GNC's conduct constitutes the violations of laws alleged herein;

  c. GNC acted willfully, recklessly, negligently, or with gross negligence in committing the violations of law alleged herein;

  d. Plaintiffs and the Class members are entitled to injunctive relief; and

  e. Plaintiffs and the Class members are entitled to restitution and damages.

93.     Because they were subject to the same unlawful and deceptive marketing practices of the Supplements, and because they purchased the GNC proprietary brand supplements, all Class members were subject to the same wrongful conduct.

94.     Absent GNC's material deceptions, misstatements, and omissions, Plaintiffs and the other Class members would not have purchased the GNC proprietary brand supplements.

95.     **Typicality**. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and the Class members all purchased the GNC proprietary brand supplements and were injured thereby. The claims of Plaintiffs and the Class members are based on the same legal theories and arise from the same deceptive, misleading, and unlawful conduct.

96.     **Adequacy of Representation**. Plaintiffs are adequate representatives of the Class because their interests do not conflict with those of the Class members. Each Class member seeks damages reflecting a similar and discrete purchase, or similar and discrete purchases, that each Class member made. Plaintiffs have retained competent and experienced class action counsel who intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

97.     **Injunctive or Declaratory Relief**. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

98.     **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The amount at stake for each Class member, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Additionally, adjudication of this controversy as a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein. Plaintiffs anticipate no difficulty in the management of this action as a class action.

99.     **Notice to the Class**. Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law
CAL. BUS. & PROF. § 17200 *et seq.*
Unlawful Conduct Prong
(By Plaintiffs Arora and Clinton, on Behalf of the California Subclass)**

100.     Plaintiffs Arora and Clinton repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

101.     Plaintiffs Arora and Clinton bring this claim on behalf of the California Subclass for violation of the "unlawful" prong of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

102.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

103.     Defendant's acts, omissions, misrepresentations, practices, and non-disclosures concerning its proprietary brand supplements, as alleged herein, constitute "unlawful" business acts and practices in that they violate the FFDCA, as amended by DSHEA, and implementing regulations, including, at least, the following sections:

a.     The requirement under 21 C.F.R. § 101.93(b) that dietary supplements include a disclaimer on each package or label panel stating a structure/function claim notifying the consumer that the FDA has not reviewed or approved of such claims and that the supplement is not intended to treat, cure, or prevent any disease;

b.     The requirement that each disclaimer be prominent and not obscured or by voluntary claims and information. *Id.*; 21 U.S.C. § 403(r)(6)(C);

c.     The requirement that all drugs receive pre-approval prior to being marketed and sold, including drugs that would otherwise qualify as dietary supplements were they to include proper disclaimers. *See* 21 U.S.C. § 343(r)(6);

d.     The prohibition on introduction of misbranded dietary supplements into interstate commerce. 21 U.S.C. §§ 331, 333; and

e.     The requirement prohibiting marketing claims that are "false or misleading in any particular." 21 U.S.C. § 343(a)(1); 21 C.F.R. § 101.93(a)(3).

104.     Each of GNC's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, CAL. HEALTH & SAFETY CODE § 109875 *et seq.* (the "Sherman Law"), including, but not limited to, the following sections:

a.     Section 110100 (adopting all FDA regulations as state regulations);

b.    Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.");

c.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

d.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

e.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

f.    Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

g.    Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

105.    Each of the challenged omissions, statements, and actions by GNC violates the FFDCA, as amended by DSHEA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

106.    GNC's conduct is further "unlawful" because it violates California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL"), and California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA"), as discussed in the claims below.

107.    GNC leveraged its omissions and deception to induce Plaintiffs Arora and Clinton, and the members of the California Subclass, to purchase Supplements that were of different characteristics, value, and/or quality than advertised.

108.    GNC's unlawful sales and deceptive marketing and labeling caused Plaintiffs Arora and Clinton and the members of the California Subclass to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain. Had Plaintiffs and the members of the California Subclass been aware of GNC's unlawful marketing, labeling, and/or sales tactics, they

1  would not have purchased GNC Supplements, purchased as much of GNC Supplements, or paid

2  as much for GNC Supplements.

3     109. In accordance with California Business and Professions Code section 17203,

4  Plaintiffs Arora and Clinton seek an order enjoining GNC from continuing to conduct business

5  through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective

6  advertising campaign.

7     110. Plaintiffs Arora and Clinton also seek an order for the disgorgement and restitution

8  of all monies from the sale of the GNC proprietary brand supplements that GNC unjustly acquired

9  through acts of unlawful, unfair, and/or fraudulent competition.

10     111. Therefore, Plaintiffs Arora and Clinton pray for relief as set forth below.

11  
**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
12  **CAL. BUS. & PROF. CODE § 17200 *et seq.***
**Unfair and Fraudulent Conduct Prongs**
13  **(By Plaintiffs Arora and Clinton, on Behalf of the California Subclass)**

14     112. Plaintiffs Arora and Clinton repeat each and every allegation contained in the

15  paragraphs above and incorporate such allegations by reference herein.

16     113. Plaintiffs Arora and Clinton bring this claim on behalf of the California Subclass

17  for violation of the "unfair" and "fraudulent" prongs of the UCL.

18     114. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

19  CAL. BUS. & PROF. CODE § 17200.

20     115. Defendant's false and misleading labeling and marketing of the GNC Supplements

21  as alleged herein constitute "unfair" business acts and practices because such conduct is immoral,

22  unscrupulous, and offends public policy. Further, the gravity of GNC's conduct outweighs any

23  conceivable benefit of such conduct.

24     116. The acts, omissions, misrepresentations, practices, and non-disclosures of GNC, as

25  alleged herein, constitute "fraudulent" business acts and practices, because GNC's conduct is false

26  and misleading to reasonable consumers, including Plaintiffs Arora and Clinton and the members

27  of the California Subclass.

28

117.    GNC's marketing and labeling of its Supplements is likely to deceive reasonable consumers about their characteristics and value.

118.    GNC either knew or reasonably should have known that the claims in the marketing, advertising, and labeling of the dietary supplements were likely to deceive reasonable consumers.

119.    In accordance with California Business & Professions Code section 17203, Plaintiffs Arora and Clinton seek an order enjoining GNC from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

120.    Plaintiffs Arora and Clinton also seek an order for the disgorgement and restitution of all monies from the sale of GNC Supplements that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

121.    Therefore, Plaintiffs Arora and Clinton pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
#### Violation of California's False Advertising Law
CAL. BUS. & PROF. CODE § 17500 *et seq.*
**(By Plaintiffs Arora and Clinton, on Behalf of the California Subclass)**

122.    Plaintiffs Arora and Clinton repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

123.    Plaintiffs Arora and Clinton bring this claim on behalf of the California Subclass for violation of the FAL.

124.    The FAL prohibits making any false or misleading advertising claim. CAL. BUS. & PROF. CODE § 17500.

125.    As alleged herein, GNC, in its marketing and labeling of its Supplements makes "false [and] misleading advertising claim[s]" that deceive consumers about their characteristics and value.

126.    In reliance on these false and misleading marketing claims, Plaintiffs Arora and Clinton and the members of the California Subclass purchased GNC Supplements believing that

1    they were: properly branded, lawful, FDA-approved, and/or intended to prevent, treat, or cure

2    disease.

3         127.    GNC knew or should have known that the marketing and labeling of the

4    Supplements was likely to deceive consumers.

5         128.    As a result, Plaintiffs Arora and Clinton and the California Subclass members seek

6    injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which

7    GNC was unjustly enriched.

8         129.    Therefore, Plaintiffs Arora and Clinton pray for relief as set forth below.

9                         **FOURTH CLAIM FOR RELIEF**
                **Violation of California's Consumers Legal Remedies Act**
10                     **CAL. CIV. CODE § 1750 *et seq.***
            **(By Plaintiffs Arora and Clinton, on Behalf of the California Subclass)**
11                        **(Injunctive Relief Only)**

12        130.    Plaintiffs Arora and Clinton repeat each and every allegation contained in the

13   paragraphs above and incorporate such allegations by reference herein.

14        131.    Plaintiffs Arora and Clinton bring this claim on behalf of the California Subclass

15   for violation of the CLRA, seeking injunctive relief only.

16        132.    The CLRA adopts a statutory scheme prohibiting various deceptive practices in

17   connection with the conduct of a business providing goods, property, or services primarily for

18   personal, family, or household purposes.

19        133.    GNC's policies, acts, and practices were designed to, and did, result in the purchase

20   and use of GNC's Supplements primarily for personal, family, or household purposes, and

21   violated and continue to violate the following sections of the CLRA:

22             a.    Section 1770(a)(5), which prohibits representing that goods have a

23   particular composition or contents that they do not have;

24             b.    Section 1770(a)(5), which also prohibits representing that goods have

25   characteristics, uses, or benefits that they do not have;

26             c.    Section 1770(a)(7), which prohibits representing that goods are of a

27   particular standard, quality, or grade if they are of another;

28

1            d.      Section 1770(a)(9), which prohibits advertising goods with intent not to sell

2    them as advertised; and

3            e.      Section 1770(a)(16), which prohibits representing that the subject of a

4    transaction has been supplied in accordance with a previous representation when it has not.

5         134.    As a result, in accordance with California Civil Code section 1780(a)(2), Plaintiffs

6    Arora and Clinton and the members of the California Subclass have suffered irreparable harm and

7    seek injunctive relief in the form of an order:

8            a.      Enjoining GNC from continuing to engage in the deceptive practices

9    described above;

10           b.      Requiring GNC to provide public notice of the true nature of its

11   Supplements; and

12           c.      Enjoining GNC from such deceptive business practices in the future.

13        135.    Pursuant to section 1782 of the CLRA, Plaintiffs Arora and Clinton hereby notify

14   GNC in writing of its particular violations of section 1770 of the CLRA and are demanding,

15   among other actions, that GNC cease marketing its Supplements as set forth in detail above and

16   correct, repair, replace, or otherwise rectify GNC Supplements that are in violation of section

17   1770. If GNC fails to respond to Plaintiffs Arora and Clinton's demand within 30 days of this

18   notice, pursuant to section 1782 of the CLRA, Plaintiffs will amend this Class Action Complaint

19   to request, in addition to the above relief, statutory damages, actual damages, punitive damages,

20   interest, and attorneys' fees.

21        136.    Therefore, Plaintiffs Arora and Clinton pray for relief as set forth below.

22                           **FIFTH CLAIM FOR RELIEF**
     **Violation of New York's Consumer Protection from Deceptive Acts and Practices Law**

23   **N.Y. Gen. Bus. Law § 349 *et seq.***
     **(By Plaintiff Johnston, on Behalf of the New York Subclass)**

24

25        137.    Plaintiff Johnston repeats each and every allegation contained in the paragraphs

26   above and incorporates such allegations by reference herein.

27

28

138.    Plaintiff Johnston brings this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

139.    Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 349(a).

140.    GNC's labeling and marketing of the GNC brand proprietary supplements, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Johnston and the New York Subclass as to the characteristics and value of the GNC brand proprietary supplements.

141.    Subsection (h) of section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. GEN. BUS. LAW § 349(h).

142.    In accordance with subsection (h) of section 349, Plaintiff Johnston seeks an order enjoining GNC from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, GNC will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members.

143.    As a consequence of GNC's deceptive acts and practices, Plaintiff Johnston and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Johnston and other members of the New York Subclass also seek actual

damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

144.   Therefore, Plaintiff Johnston prays for relief as set forth below.

**SIXTH CLAIM FOR RELIEF**
**Violation of New York's Consumer Protection from Deceptive Acts and Practices Law**
**N.Y. GEN. BUS. LAW § 350 *et seq.***
**(By Plaintiff Johnston, on Behalf of the New York Subclass)**

145.   Plaintiff Johnston repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

146.   Plaintiff Johnston brings this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350.

147.   Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 350.

148.   New York General Business Law section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. GEN. BUS. LAW § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

149.   GNC's labeling, marketing, and advertising of GNC brand proprietary supplements, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the GNC brand proprietary supplements as consisting of characteristics and lawfulness that they do not possess.

150.   Plaintiff Johnston seeks an order enjoining GNC from continuing this false advertising. Absent enjoining this false advertising, GNC will continue to mislead Plaintiff Johnston and the other members of the New York Subclass as to the characteristics of the GNC

brand proprietary supplements and, in doing so, irreparably harm each of the New York Subclass members.

151.    As a direct and proximate result of GNC's violation of New York General Business Law section 350, Plaintiff Johnston and the other members of the New York Subclass have also suffered an ascertainable loss of monies.  By reason of the foregoing, Plaintiff Johnston and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

152.    Therefore, Plaintiff Johnston prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment / Quasi-Contract
**(By Plaintiffs Arora, Clinton, and Johnston, on Behalf of the Nationwide Subclass)**

153.    Plaintiffs incorporate by reference each allegation set forth above.

154.    As a result of GNC's unlawful and misleading labeling, marketing, and sale of the Supplements, GNC was enriched at the expense of Plaintiffs.

155.    GNC sold Supplements to Plaintiffs that were not capable of being sold legally and that were worthless.

156.    Plaintiffs paid a premium price for the Supplements.

157.    It is against equity and good conscience to permit GNC to retain the ill-gotten benefits received from Plaintiffs and the Nationwide Subclass members given that the Supplements were not what GNC purported them to be.

158.    It would be unjust and inequitable for GNC to retain the benefit, warranting restitutionary disgorgement to Plaintiffs and the Nationwide Subclass members of all monies paid for the Supplements, and/or all monies paid for which Plaintiffs and the Nationwide Subclass members did not receive benefit.

159.    As a direct and proximate result of GNC's actions, Plaintiffs and the Nationwide Subclass members have suffered damages in an amount to be proven at trial.

160.    Therefore, Plaintiffs pray for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class, pray for judgment as follows:

A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.      declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.      declaring that Defendant has committed the violations of law alleged herein;

D.      providing for any and all injunctive relief the Court deems appropriate;

E.      awarding statutory damages in the maximum amount for which the law provides;

F.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.      providing for any and all equitable monetary relief the Court deems appropriate;

H.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.      awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

J.      awarding pre- and post-judgment interest to the extent the law allows; and

K.      for such further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## JURY DEMAND

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

3    trial by jury on all claims so triable.

4

5    Dated: May 3, 2019                    **KAPLAN FOX & KILSHEIMER LLP**

6                                          By: __/s/__ _Laurence D. King_____
                                                      Laurence D. King

7                                          Laurence D. King (SBN 206423)
                                           _lking@kaplanfox.com_
8                                          Mario M. Choi (SBN 243409)
                                           _mchoi@kaplanfox.com_
9                                          350 Sansome Street, Suite 400
                                           San Francisco, CA 94104
10                                         Telephone: (415) 772-4700
                                           Facsimile:  (415) 772-4709
11
                                           **KAPLAN FOX & KILSHEIMER LLP**
12                                         Maia C. Kats (to be admitted _pro hac vice_)
                                           _mkats@kaplanfox.com_
13                                         6109 32nd Place, NW
                                           Washington, DC 20015
14                                         Telephone:  (202) 669-0658

15                                         **REESE LLP**
                                           Michael R. Reese (SBN 206773)
16                                         _mreese@reesellp.com_
                                           George V. Granade (SBN 316050)
17                                         _ggranade@reesellp.com_
                                           100 West 93rd Street, 16th Floor
18                                         New York, New York 10025
                                           Telephone: (212) 643-0500
19                                         Facsimile: (212) 253-4272

20                                         _Counsel for Plaintiffs Richa Arora, Randy Clinton,_
                                           _and Walter Johnston and the Proposed Class_
21

22

23

24

25

26

27

28