Andrew M. Hutchison (SBN 289315)
COZEN O'CONNOR
101 Montgomery Street, Suite 1400
San Francisco, California  94104
Telephone:     415.644.0914
Facsimile:      415.644.0978
ahutchison@cozen.com

Attorneys for Defendant
GNC Holdings, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHA ARORA, RANDY CLINTON, and WALTER JOHNSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GNC HOLDINGS, INC. and DOES 1-100,<br><br>Defendants. | Case No.: 3:19-cv-02414-LB<br><br>**DEFENDANT GNC HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with [Proposed] Order]<br><br>Date:  September 12, 2019<br>Time: 9:30 a.m.<br>Place: 15th Floor, Courtroom B |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

**I.**   INTRODUCTION ............................................................................................. 2

**II.**   BACKGROUND ............................................................................................... 4

**III.**   ARGUMENT .................................................................................................... 5

  **A.**   Plaintiffs Lack Standing To Assert Claims Under The "Unlawful Prong" Of The UCL ...................................................................................... 6

  **B.**   Plaintiffs' Fraud Claims Were Not Pled With Sufficient Particularity ...................... 10

  **C.**   Plaintiffs' UCL And FAL Claims Should Be Dismissed Because There Is An Adequate Remedy At Law .................................................................... 13

  **D.**   Plaintiff Johnston's GBL §§ 349 And 350 Claims Are Insufficiently Pled .............. 14

  **E.**   Plaintiffs' Unjust Enrichment Claim Is Insufficiently Pled For Failure To Plead Any Actionable Claim .............................................................. 16

  **F.**   Plaintiffs Lack Standing To Seek Injunctive Relief .................................. 16

  **G.**   Plaintiffs Do Not Have Standing To Bring Claims For Products They Did Not Purchase ............................................................................. 19

**IV.**   CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple & AT&T iPad Unlimited Data Plan Litigation,*
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................2, 6, 16

*Baltazar v. Apple, Inc.,*
   No. CV-10-3231, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ....................................12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................2, 5, 6, 12, 16

*Bird v. First Alert, Inc., et al.,*
   No. C 14-3585, 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ....................................14

*Brazil v. Dole Packaged Foods, LLC,*
   660 Fed. App'x. 531 (9th Cir. 2016) .........................................................................6, 8

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) .....................................................................................5

*Clorox Co. v. Reckitt Benckiser Group, PLC,*
   No. 19-cv-01452, 2019 WL 3068322 (N.D. Cal. July 12, 2019) ................................10

*Cordes v. Boulder Brands USA, Inc.,*
   No. CV 18-6534, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018)................................17, 18, 19, 20

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018) .............................................................10, 16, 17, 18, 19

*Durkee v. Ford Motor Co.,*
   No. C 14-0617, 2014 WL 4352184 (N.D. Cal. Sep. 2, 2014) ......................................13

*Falk v. Nissan N. Am., Inc.,*
   No. 17-cv-04871, 2018 WL 2234303 (N.D. Cal. May 16, 2018)...........................18, 19

*Fernandez v. Atkins Nutritionals, Inc.,*
   No. 3:17-cv-01628, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ............................18, 19

*Gardner v. Safeco Ins. Co. of Am.,*
   No. 14-cv-02024, 2014 WL 2568895 (N.D. Cal. June 6, 2014)...................................13

*In re Gilead Sciences Securities Litig.,*
   536 F.3d 1049 (9th Cir. 2008) .....................................................................................6

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
   No. C 09-1597, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ......................................................12

*Kane v. Chobani, Inc.*,
   No. 12-cv-02425, 2013 WL 5289253 (N.D. Cal. Sep. 19, 2013) ..............................................9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .......................................................................................10, 12

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) .............................................................................................................7

*Maxwell v. Unilever United States, Inc.*,
   No. 5:12-cv-01736, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ..........................................9

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................................................5

*Millennium Health, LLC v. EmblemHealth, Inc.*,
   240 F. Supp. 3d 276 (S.D.N.Y. 2017) ...................................................................................15

*Min Sook Shin v. Umeken USA, Inc.*,
   --- Fed. App'x. ---, 2019 WL 2338467 (9th Cir. June 3, 2019) ...............................................17

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   No. 2:10-cv-02630, 2011 WL 1497096 (E.D. Cal. April 19, 2011) .....................................19, 20

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ..................................................................................12

*Noll v. eBay, Inc.*,
   282 F.R.D. 462 (N.D. Cal. 2012) ............................................................................................12

*Orshan v. Apple Inc.*,
   No. 5:14-cv-05659, 2018 WL 1510202 (N.D. Cal. Mar. 27, 2018) .........................................12

*Pratt v. Whole Foods Market California, Inc.*,
   No. 5:12-cv-05652, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ..........................................9

*Pratt v. Whole Foods Market California, Inc.*,
   No. 5:12-cv-05652, 2015 WL 5770799 (N.D. Cal. Sep. 30, 2015) .......................................8, 9

*Rahman v. Mott's LLP*,
   No. 13-cv-03482, 2018 WL 4585024 (N.D. Cal. Sep. 25, 2018) .........................................18, 19

*Rhynes v. Stryker Corp.*,
   No. 10-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ...................................................14

*Robinson v. J. M. Smucker Co.*,
   No. 18-cv-04654, 2019 WL 2029069 (N.D. Cal. May 8, 2019) ..........................................13, 14

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................................16

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-cv-7061, 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) ...............................14

*Swearingen v. Amazon Preservation Partners, Inc.*,
    No. 13-cv-04402, 2014 WL 1100944 (N.D. Cal. Mar. 18, 2014) ................................9

*Swearingen v. Late July Snacks LLC*,
    No. 13-cv-04324, 2017 WL 4641896 (N.D. Cal. Oct. 16, 2017) .............................6, 7

*Taylor v. Yee*,
    780 F.3d 928 (9th Cir. 2015) ....................................................................................5

*Tomasino v. Estee Lauder Companies Inc.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................15, 16

*Turner v. City & County of San Francisco*,
    788 F.3d 1206 (9th Cir. 2015) ..................................................................................6

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................10

*Wright v. Publishers Clearing House, Inc.*,
    372 F. Supp. 3d 61 (E.D.N.Y. 2019) ...................................................................14, 15

**Federal Statutes**

21 U.S.C. § 343 ...............................................................................................................7

**State Statutes**

Cal. Bus. & Prof. Code § 17204 .................................................................................6, 7

Cal. Health & Safety Code § 110660 ..............................................................................6

Cal. Health & Safety Code § 110670 ..............................................................................6

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................12, 16

Fed. R. of Civ. P. 9 .........................................................................................2, 10, 11, 12

Fed. R. Civ. P. 12(b)(1) ....................................................................................................5

Fed. R. Civ. P. 12(b)(6) ....................................................................................................5

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO THE COURT, TO ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2019 at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom B – 15th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Defendant GNC Holdings, Inc. ("GNC") will move and hereby does move to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1)[1] and 12(b)(6) for lack of standing and failure to state a claim for relief.

GNC's motion to dismiss is based on the following grounds: (1) Plaintiffs lack standing to bring their claim under California's Unfair Competition Law, to seek injunctive relief, and to bring claims for products they did not allegedly purchase; (2) Plaintiffs' Complaint lacks necessary allegations to state a claim under California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act and New York's General Business Law §§ 349 and 350; (3) Plaintiffs are barred from seeking equitable claims because they admit they have an adequate remedy at law; and (4) Plaintiffs' unjust enrichment claim fails because the underlying claims are inadequately pled.

This motion is based on the instant motion and Memorandum of Points and Authorities, oral argument, any reply brief, the pleadings and files in this case, and such additional evidence and argument as may be properly introduced in support of the motion.

Dated:   July 19, 2019                    COZEN O'CONNOR


By: /s/ Andrew M. Hutchison
      Andrew M. Hutchison
      Attorneys for Defendant
      GNC Holdings, Inc.

---

[1] GNC is also investigating whether any or all of Plaintiffs' claims are subject to mandatory arbitration pursuant to GNC's rewards program.  If it is discovered that they are, GNC will file a subsequent motion to compel arbitration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs filed this putative class action seeking to represent nationwide, California, and New York classes of consumers who purchased unspecified dietary supplements from GNC because they contend that the labeling on these unidentified supplements were "unlawful" and "misleading and deceptive."  Plaintiffs' allegations, however, are little more than vague, conclusory allegations that do not satisfy *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure 9(b).  All of Plaintiffs' claims are subject to dismissal.

First, Plaintiffs[2] lack standing to bring a claim under the "unlawful prong" of California's Unfair Competition Law ("UCL").  This claim is based on the contention that a disclaimer that the supplements (1) were not "evaluated by the Food and Drug Administration" and (2) were not "intended to diagnose, treat, cure, or prevent any disease" was allegedly misplaced, which rendered the supplements "misbranded" and "unlawful" under California law.  Even accepting Plaintiffs' allegations as true—which GNC denies—Plaintiffs lack standing because they have not adequately alleged reliance.  The Ninth Circuit has confirmed that this omission is fatal.  Contrary to what Plaintiffs may suggest in their Complaint or in their opposition to this motion to dismiss, they simply cannot sustain a claim—even under the "unlawful prong" of the UCL—by merely suggesting that these supplements violated some law.

Second, Plaintiffs' claims under the "unfair and fraudulent prongs" of the UCL, California's False Advertising Law ("FAL"), and California's Consumer Legal Remedies Act ("CLRA") should be dismissed.  These claims—all of which sound in fraud—are not pled with the particularity required by Federal Rule of Civil Procedure 9(b).  The Ninth Circuit has repeatedly stated that claims of fraud must be pled with the "who, what, when, where, and how" along with allegations of why the subject labeling is misleading or deceptive.  Not only have Plaintiffs failed to allege the specific supplements at issue, but they have also failed to allege the specific representations on the

---

[2] Certain claims in the Complaint were only brought by certain Plaintiffs.  As discussed in this Memorandum of Points and Authorities, however, the claims asserted in the Complaint are subject to dismissal for the same reasons, regardless of which Plaintiff asserts the claim.  For ease of reference, therefore, GNC simply refers to "Plaintiffs" throughout this Memorandum of Points and Authorities.

labeling which are misleading or deceptive and, critically, why those representations are misleading and deceptive.  Without the requisite particularity, GNC is left to guess as to what representations Plaintiffs allegedly relied upon, what representations Plaintiffs allege are purportedly deceptive or misleading, and why those statements are purportedly deceptive or misleading.  The prejudice GNC faces in this inability to understand and defend the allegations of fraud is the reason why Rule 9(b) applies to these claims, and Plaintiffs should be held to their pleading burden.

Third, in addition to the above reasons, Plaintiffs' UCL and FAL claims should be dismissed because they are equitable in nature, and Plaintiffs have conceded that they have an adequate remedy at law in the form of their CLRA claim.  Given this admission, Plaintiffs are unable to demonstrate that there is no adequate remedy at law, and they are therefore barred from pursuing their equitable claims.  The majority of the district courts in this Circuit have confirmed that UCL and FAL claims should be dismissed when a CLRA claim is asserted, and the claims here are no different.

Fourth, Plaintiffs' claims under New York's General Business Law ("GBL") §§ 349 and 350 should be dismissed because Plaintiffs have not identified the statements on the supplements' labeling which are purportedly false or misleading.  New York law requires that a plaintiff plead the statements to which he or she was exposed and an explanation of why those statements gave rise to the purported misleading conduct.  Without such allegations, these claims should be dismissed.

Fifth, based on the above, Plaintiffs have not adequately asserted any actionable conduct by GNC.  Their unjust enrichment claim, therefore, is equally subject to dismissal.

Sixth, Plaintiffs lack standing to seek injunctive relief.  The Ninth Circuit has recently concluded that an allegation that a product is "worthless" demonstrates that a plaintiff will not again purchase the product and, therefore, there is no risk of future harm.  Plaintiffs repeatedly allege that the supplements are "worthless" and, therefore, they have no standing to seek injunctive relief.  Moreover, given that Plaintiffs were allegedly under the mistaken belief that the supplements were "intended to prevent, cure, or treat a disease or health-related condition linked to disease," and they are now fully aware that the supplements were never intended to do so, there is equally no risk of future harm, and they have no standing to seek injunctive relief.

1    Seventh, Plaintiffs lack standing to bring claims for products they did not purchase. Indeed,

2    to the extent Plaintiffs did not purchase certain supplements, they cannot have "relied" on, or

3    otherwise been deceived by, representations they did not see. Even applying a "substantially

4    similar" analysis, Plaintiffs lack standing because their Complaint is woefully deficient regarding

5    specifics of the identity of the other supplements at issue, let alone how they are "substantially

6    similar" to the ones purportedly purchased by Plaintiffs.

7    For these reasons and those that follow, GNC respectfully requests that this Court dismiss

8    Plaintiffs' Complaint.

9    **II.    BACKGROUND**

10    On May 3, 2019, Plaintiffs filed this putative class action seeking various forms of relief

11    relating to their alleged purchases of certain GNC-brand dietary supplements. *See generally* ECF

12    No. 1. Plaintiffs allege, generally, that their claims arise out of "GNC's unlawful, deceptive, and

13    misleading labeling, marketing, and sale of GNC proprietary brand dietary supplements . . . ." *Id.* at

14    ¶ 1. Plaintiffs, however, do not provide a list of all of the supplements at issue. Rather, they simply

15    refer to <u>all</u> GNC-brand supplements and then include an "including, but not limited to" list of five

16    (5) specific GNC-brand supplements: (1) Men's Prostrate Formula; (2) Diabetic Support; (3)

17    Preventative Nutrition Healthy Blood Pressure; (4) Women's Ultra Mega Active; and (5) Mega Men

18    Healthy Testosterone. *Id.* Plaintiffs, however, did not even purchase all of these supplements, let

19    alone all of the unidentified GNC-brand supplements purportedly at issue. To the contrary, Plaintiff

20    Arora alleges she purchased Prostate Formula and Women's Ultra Mega Active, Plaintiff Clinton

21    alleges he purchased Diabetic Support, and Plaintiff Johnston alleges he purchased Mega Men

22    Performance and Vitality Mega Vitapaks. *Id.* at ¶¶ 18, 25, 32.

23    Plaintiffs allege that their claims arise out of three "theories." First, Plaintiffs contend that

24    certain, unidentified supplements were "unlawful" because a certain disclaimer was on the back of

25    the supplement labeling rather than the front. *Id.* at ¶¶ 5-7, 69. Second, Plaintiffs assert claims

26    under their respective states' consumer protection statutes that the supplements' marketing and/or

27    labeling are "misleading and deceptive." *Id.* at ¶ 3. As discussed below, however, Plaintiffs do not

28    state with any particularity what is "misleading and deceptive" or why. Rather, they allege in a

conclusory manner that "GNC deceptively labels, markets, and sells the Supplements as having been subjected to the FDA's pre-market approval process; and/or intended to prevent, cure, or treat a disease or health-related condition linked to disease." *Id.* at ¶ 12.  Third, Plaintiffs advance a general common law unjust enrichment claim.  *Id.* at ¶ 4.

On these bare allegations, Plaintiffs seek to represent three putative classes:  (1) a California subclass of all persons residing in California "who purchased one or more GNC proprietary brand supplements"; (2) a New York subclass of all persons residing in New York "who purchased one or more of GNC proprietary brand supplements"; and (3) a nationwide subclass of all persons in the United States "who purchased one or more GNC proprietary brand supplements." *Id.* at ¶ 87.

## III.   ARGUMENT

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) is the appropriate mechanism to dismiss a claim for lack of Article III standing.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*  "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted and alteration in original).  Although this Court is to accept Plaintiffs' allegations as true, the Court is not "required to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  In essence, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The "plausibility" requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." *Turner v. City & County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015).  To that end, a complaint must be dismissed if it cannot cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

As set forth more fully below, Plaintiffs lack standing to assert certain claims, and the allegations in the Complaint otherwise fail to rise above the level of "labels, conclusions, and formulae" proscribed by *Twombly*.

**A.**   <u>**Plaintiffs Lack Standing To Assert Claims Under The "Unlawful Prong" Of The UCL**</u>

Plaintiffs lack standing to assert their claim under the "unlawful prong" of the UCL.  To have standing to assert a UCL claim, a person must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Where, as here, the UCL "unlawful prong" claim sounds in a claim of misrepresentation, a plaintiff is required to allege reliance to have standing.  *See, e.g.*, *Swearingen v. Late July Snacks LLC*, No. 13-cv-04324, 2017 WL 4641896 at *2 (N.D. Cal. Oct. 16, 2017).  *See also Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x. 531, 534 (9th Cir. 2016) (affirming dismissal of UCL "unlawful" claim because plaintiff "did not see the allegedly offending statements" and "statements therefore cannot be said to have influenced his purchase, and he cannot state a claim that derives from this theory of misrepresentation").

*Swearingen* is instructive.  There, the plaintiffs brought, among others, a claim that the defendant's labeling violated the "unlawful" prong of the UCL "insofar as it violated the Sherman law" with respect to the use of the term "evaporated cane juice." *Swearingen*, 2017 WL 4641896 at *1.  The plaintiffs argued that reliance was not an element of the Sherman Law and, therefore, it was

also not an element under the "unlawful" prong of the UCL. *Id.* at *2. The Court concluded that "[t]his argument misses the mark" because the issue of reliance was one of *standing*, not of the elements of a claim. *Id.* The Court explained that the California Supreme Court in *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011) "made clear that where the essence of the claim is based on misrepresentations," the "as a result of" language of Cal. Bus. & Prof. Code § 17204 "require[d] a showing of a causal connection or reliance on the alleged misrepresentation." *Id.*

The Court in *Swearingen* continued to explain that the plaintiffs' claims—asserting violations of the Sherman Law—sounded in "misrepresentation." *Id.* at *3. First, the Court pointed to various sections of the Sherman Law which contain terms such as "false" or "misleading." *Id.* (citing to, among others, Cal. Health & Safety Code § 110660 (using phrase "false or misleading") and Cal. Health & Safety Code § 110670 (using phrase "misleading")). The Court then noted that the regulations at issue "sound in misrepresentation" and that the plaintiffs utilized language in their allegations such as "disseminat[ing] false or misleading food advertisements," "selling 'falsely advertised food,'" "advertising 'misbranded food,'" and "using 'false and misleading' labeling." *Id.* Ultimately, therefore, the Court found that the plaintiffs "must allege and demonstrate that they relied on the misrepresentation on the deceptive label 'evaporated cane juice' in order to show that they were harmed 'as a result of' the deceptive label." *Id.* In doing so, the Court rejected any type of "strict liability" theory based upon an "unlawful" UCL claim. *Id.*

A cursory review of Plaintiffs' Complaint reveals that the "unlawful" UCL claim sounds in misrepresentation. First, at the heart of Plaintiffs' claim is 21 U.S.C. § 343 which states that certain statements may be made for dietary supplements if they, among other conditions, are "truthful and not misleading." 21 U.S.C. § 343(r)(6)(B); *see also* ECF No. 1 at ¶ 54. Indeed, Plaintiffs claim that GNC engaged in "'unlawful' business acts and practices" by violating, among other things, "[t]he requirement prohibiting marketing claims that are 'false or misleading.'" *Id.* at ¶ 103(e) (citing 21 U.S.C. § 343(a)(1) and 21 C.F.R. § 101.93(a)(3)). Furthermore, various sections of the Sherman Law Plaintiffs allege are implicated in their "unlawful" UCL claim sound in misrepresentation. *See id.* at ¶ 104(b) (alleging GNC violated Sherman Law § 110290 regarding "whether the labeling or advertising of a food . . . is misleading"); *id.* at ¶ 104(c) (alleging GNC violated Sherman Law §

110390 regarding the dissemination of "any false advertisement of any food"); *id.* at ¶ 104(d) (alleging GNC violated Sherman Law § 110395 regarding food "that is falsely advertised"); *id.* at ¶ 104(f) (alleging GNC violated Sherman Law § 110400 regarding food that is "falsely advertised"); *id.* at ¶ 104(g) (alleging GNC violated Sherman Law § 110660 regarding food that is "misbranded if its labeling is false or misleading").   Moreover, Plaintiffs' express allegations are that the "unlawful" claims are inherently intertwined with their deception claims.  *See, e.g.*, ECF No. 1 at ¶ 72 ("As described above, GNC markets and labels its Supplements as correctly branded, lawful, FDA-approved, and/or of therapeutic value (intended to prevent or treat disease or conditions associated with disease), and does so deceptively and misleadingly."); *id.* at ¶ 107 (under "unlawful" UCL cause of action count, alleging GNC's "deception"); *id.* at ¶ 108 (under "unlawful" UCL cause of action count, alleging GNC's "deceptive marketing and labeling").  It is clear that Plaintiffs' "unlawful" UCL claim is premised upon misrepresentations and, therefore, requires a showing of reliance.

　　　　To that end, Plaintiffs do not adequately plead a cognizable theory of "reliance" for purposes of their "unlawful" UCL claim.  While not at all clear from Plaintiffs' Complaint, it appears that Plaintiffs' theory of reliance is that they purchased the supplements believing that they were "lawful."  *See, e.g.*, ECF No. 1 at ¶ 78 ("Based on the Supplements' labeling, Plaintiffs believed the GNC Supplements had the aforementioned characteristics and benefits, including that they were lawful.").  In other words, Plaintiffs are attempting to hold GNC "strictly liable" for any purported violation of the Sherman Law.  The Ninth Circuit rejects such a theory.  *Brazil*, 660 Fed. App'x. at 534.  In *Brazil*, the plaintiff claimed that the subject product was "illegal under California law" because certain representations rendered them to be "mislabeled and 'illegal'" and, thus, they were "'unlawful' under the UCL" and "should not have been sold at all."  *Id.*  The Ninth Circuit reasoned that the plaintiff never saw the challenged representations before purchasing the product and, therefore, it could not "be said to have influenced his purchase, and he cannot state a claim that derives from this theory of misrepresentation."  *Id.*  Even before *Brazil*, courts in this Circuit have rejected similar types of "strict liability" theories with respect to "unlawful" UCL claims.  *See, e.g.*, *Pratt v. Whole Foods Market California, Inc.*, No. 5:12-cv-05652, 2015 WL 5770799 at *4 (N.D.

Cal. Sep. 30, 2015) ("The court previously rejected the theory that a defendant's liability attaches under the UCL merely because its product label allegedly violates a law."); *Pratt v. Whole Foods Market California, Inc.*, No. 5:12-cv-05652, 2014 WL 1324288 at \*8 (N.D. Cal. Mar. 31, 2014) ("Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance."); *Swearingen v. Amazon Preservation Partners, Inc.*, No. 13-cv-04402, 2014 WL 1100944 at \*2 (N.D. Cal. Mar. 18, 2014) (rejecting as not "persuasive" plaintiffs' arguments that "reliance is not required because they allege that they purchased an 'illegal product'" and that they purchased "product implicitly relying on [defendant] to sell a product which did not violate labeling laws"); *Kane v. Chobani, Inc.*, No. 12-cv-02425, 2013 WL 5289253 at \*9 (N.D. Cal. Sep. 19, 2013) (rejecting assertion of reliance that representations violated "FDA labeling requirements" and therefore products were "misbranded" and "not capable of being sold legally").  As recently explained:

> Plaintiff appears to rest her theory of deception on the salability of the products, which appears to be as follows: According to Plaintiff, by failing to disclose that "phosphoric acid" and "citric acid" were artificial ingredients, PepsiCo violated various laws and regulations (e.g., California Health & Safety Code § 110740 and 21 C.F.R. § 101.22), which rendered the Pepsi products unsalable. However, because these products were put on the market, Plaintiff continues, consumers were deceived into thinking they did not violate these statutes and/or were otherwise mislabeled. This reasoning is circular and has been consistently rejected by courts. *See, e.g.*, *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) ("[D]eception claims must be predicated on more than simple regulatory violations."). The Court likewise declines to entertain this reasoning here.

*Maxwell v. Unilever United States, Inc.*, No. 5:12-cv-01736, 2018 WL 1536761 at \*6 (N.D. Cal. Mar. 29, 2018) (internal citations to record omitted).

Plaintiffs cannot simply contend that the supplements they purportedly purchased violated the Sherman Law and they would not have purchased them otherwise.  Without a sufficient theory of reliance, Plaintiffs' "unlawful" UCL claim should be dismissed.

### B.   Plaintiffs' Fraud Claims Were Not Pled With Sufficient Particularity

Plaintiffs' claims of false or misleading labeling are insufficiently pled.  Where, as here, claims sound in fraud, the Federal Rules of Civil Procedure require that they be pled with "particularity."  Fed. R. Civ. P. 9(b).  The Ninth Circuit has interpreted this to mean "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Important to this motion to dismiss is the Ninth Circuit's requirement that a plaintiff not only plead the "who, what, when, where, and how," but also "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).  The Ninth Circuit, as well as District Courts in this Circuit, have repeatedly applied Rule 9(b)'s pleading standards to certain claims arising under the UCL, FAL, and CLRA.  *See, e.g.*, *Davidson*, 889 F.3d at 964 (noting that CLRA, FAL, and UCL claims are "grounded in fraud" and required to satisfy "heightened pleading requirements of Rule 9(b)"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (acknowledging Ninth Circuit "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL"); *In re Apple & AT&T iPad Unlimited Data Plan Litigation*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (noting Rule 9(b)'s standards apply to CLRA, UCL, and FAL claims when "grounded in fraud" or "sound in fraud"); *Clorox Co. v. Reckitt Benckiser Group, PLC*, No. 19-cv-01452, 2019 WL 3068322 at *4 (N.D. Cal. July 12, 2019) ("UCL and FAL claims sounding in fraud are also subject to the Rule 9(b) standard.").  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124.

To avoid any doubt, Plaintiffs' Second, Third, and Fourth Claims for Relief (alleged violations of the unfair and fraudulent conduct prongs of the UCL, violation of the FAL, and violation of the CLRA, respectively) are all grounded in fraud.  *See* ECF No. 1 at ¶¶ 115-16 (UCL claim, alleging "false and misleading labeling" and "'fraudulent' business acts and practices"); *id.* at ¶¶ 125-26 (FAL claim, alleging "false and misleading marketing claims" that "deceive[d]"

1     consumers); *id.* at ¶ 134 (CLRA claim, alleging "deceptive practices").  Accordingly, these claims

2     are all subject to the heightened pleading standards of Rule 9(b).

3         Against this standard, these claims are insufficiently pled.  Critically absent from the

4     Complaint are <u>any</u> allegations regarding the exact statements Plaintiffs are challenging.  Indeed,

5     Plaintiffs simply lodge conclusory allegations without any of the particularity necessary to state a

6     claim.  For instance, the Complaint alleges that "[w]ith respect to Plaintiffs' 'deceptive and

7     misleading' claims, GNC deceptively labels, markets, and sells the Supplements as having been

8     subjected to the FDA's pre-market approval process; and/or intended to prevent, cure, or treat a

9     disease or health-related condition linked to disease."  *See* ECF No. 1 at ¶ 12.  However, Plaintiffs

10     fail to point to <u>any</u> representation on <u>any</u> labeling that deceives or misleads consumers into this

11     subjective belief.  Moreover, the Complaint alleges that "GNC compounds its deception . . . with

12     misleading phrases like 'clinically studied,' 'scientifically designed,' 'physician formulated,' or

13     'physician endorsed,' and with medical symbols, and/or by referencing diseases and/or conditions

14     equated with disease in its marketing of the Supplements."  *Id.* at ¶ 13.  Yet, Plaintiffs include no

15     allegations to plausibly suggest that these phrases are false or misleading in any way, nor do they

16     point to the statements which they contend "referenc[e] diseases and/or conditions."  And, while

17     Plaintiffs allege, generally, that they believed the subject products "to have characteristics and

18     qualities that they do not have," *id.* at ¶ 16, they include no allegations of how the challenged

19     labeling conveys certain "characteristics and qualities" and what those "characteristics and qualities"

20     are.

21         Even the allegations as to each specific Plaintiff provide no better particularity.  Plaintiff

22     Arora alleges, in a conclusory manner, that she "believed that the Supplements were lawful,

23     correctly branded, subject to a governmental review and approval process, and had therapeutic value,

24     including that they were intended to prevent or treat disease, including prostate disease" and that she

25     "relied on GNC's marketing of the Supplements, both implied and express, when making her

26     purchases."  *See* ECF No. 1 at ¶¶ 19-20.  Plaintiff Clinton's allegations are similarly lacking.  *Id.* at

27     ¶¶ 26-27 (alleging "Mr. Clinton believed that the Supplements were lawful, correctly branded,

28     subject to a governmental review and approval process, and had therapeutic value, including that

they were intended to prevent or treat disease, including diabetes" and that he "relied on GNC's marketing of the Supplements, both implied and express, when making his purchases"). Neither Plaintiff explains the purported representations on the labeling that gave rise to these alleged beliefs, why such purported representations are false, and upon which purported representations they relied.[3]

Courts repeatedly dismiss claims when they lack the particularity Plaintiffs omit from their Complaint. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (affirming dismissal for failure to plead with particularity what the subject "advertisements or other sales material specifically stated," when plaintiff saw them, which ones were found to be "material," and upon which ones plaintiff relied); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012) (dismissing UCL, FAL, and CLRA claims because plaintiff failed to plead "which exact misrepresentation Plaintiff relied on," "whether that misrepresentation induced Plaintiff's decision," and "whether Plaintiff would have acted differently had there been no misrepresentation"); *Orshan v. Apple Inc.*, No. 5:14-cv-05659, 2018 WL 1510202 at *6 (N.D. Cal. Mar. 27, 2018) (dismissing FAL, CLRA, and UCL claims on basis that general allegations of defendant's "claims" do not "allow [defendant] to pinpoint which of its representations . . . gave rise to the alleged mistaken expectations which underlie Plaintiffs' theory of deception"); *Baltazar v. Apple, Inc.*, No. CV-10-3231, 2011 WL 588209 at *3 (N.D. Cal. Feb. 10, 2011) (dismissing misrepresentation claim because "the mere assertion of 'reliance' is insufficient" and a plaintiff must "allege the specifics of [the plaintiff's] reliance on the misrepresentation to show a bona fide claim of actual reliance"); *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. C 09-1597, 2010 WL 3448531 at *7 (N.D. Cal. Sep. 1, 2010) (argument that plaintiffs saw "at least the representations made on the product labeling itself" was insufficient because "they do not plead upon which representations they relied when making their purchases").

Plaintiffs' CLRA, FAL, and UCL claims lack the allegations to satisfy Rule 8 and *Twombly*, let alone the particularity required under Rule 9(b) as applied by the Ninth Circuit. These claims, accordingly, should be dismissed.

---

[3] Without such particularity, GNC is unable to assess whether Plaintiffs' claims are preempted and/or are actionable under a reasonable consumer standard.

**C.**   **Plaintiffs' UCL And FAL Claims Should Be Dismissed Because There Is An Adequate Remedy At Law**

Plaintiffs' UCL and FAL claims should be dismissed because Plaintiffs have not demonstrated that no adequate remedy at law exists for their alleged damages and, in fact, have admitted to the contrary.  "[T]he UCL and FAL provide for only equitable relief, but there is no right to equitable relief or an equitable remedy when there is an adequate remedy at law." *Robinson v. J. M. Smucker Co.*, No. 18-cv-04654, 2019 WL 2029069 at *6 (N.D. Cal. May 8, 2019) (internal quotation marks omitted); *see also Gardner v. Safeco Ins. Co. of Am.*, No. 14-cv-02024, 2014 WL 2568895 at *7 (N.D. Cal. June 6, 2014) ("relief under the UCL 'is subject to fundamental equitable principles, including inadequacy of the legal remedy'").  Indeed, a "plaintiff seeking equitable relief must establish that there is no adequate remedy at law available." *Durkee v. Ford Motor Co.*, No. C 14-0617, 2014 WL 4352184 at *2 (N.D. Cal. Sep. 2, 2014).  Importantly, the "CLRA provides for damages, as a legal remedy intended to compensate those who suffer actual damage." *Id.* at *3.  "[S]everal courts in this district have barred claims for equitable relief—including claims for violations of California consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other claims presenting an adequate remedy at law." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (collecting cases).

Here, Plaintiffs have conceded that an adequate remedy at law exists for their alleged damages.  Indeed, Plaintiffs allege the following:

> Pursuant to section 1782 of the CLRA, Plaintiffs Arora and Clinton hereby notify GNC in writing of its particular violations of section 1770 of the CLRA and are demanding, among other actions, that GNC cease marketing its Supplements as set forth in detail above and correct, repair, replace, or otherwise rectify GNC Supplements that are in violation of section 1770.  If GNC fails to respond to Plaintiffs Arora and Clinton's demand within 30 days of this notice, pursuant to section 1782 of the CLRA, Plaintiffs **will** amend this Class Action Complaint to request, in addition to the above relief, statutory damages, **actual damages**, punitive damages, interest, and attorneys' fees.

ECF No. 1 at ¶ 135 (emphasis added).  Plaintiffs have admitted, therefore, not only that there is an adequate remedy at law but also that they unequivocally intend to seek their "actual damages."

Plaintiffs' UCL and FAL claims, therefore, are barred as a matter of law because they cannot show that there is no adequate remedy at law.[4]  *See Robinson*, 2019 WL 2029069 at *6 (dismissing UCL and FAL claims based upon adequate remedy at law in form of damages under CLRA); *Falk v. Nissan N. Am., Inc.*, No. 17-cv-04871, 2018 WL 2234303 at *10 (N.D. Cal. May 16, 2018) (finding plaintiffs are "barred from seeking equitable relief" because of adequate remedy at law); *Bird v. First Alert, Inc., et al.*, No. C 14-3585, 2014 WL 7248734 at *6 (N.D. Cal. Dec. 19, 2014) ("In any event, plaintiff cannot seek restitution under the UCL because she has an adequate remedy at law in her claim for damages under the CLRA.").

### D.  Plaintiff Johnston's GBL §§ 349 And 350 Claims Are Insufficiently Pled

Plaintiff Johnston's GBL §§ 349 and 350[5] claims are insufficiently pled because he has not identified the statements which are purportedly misleading.  "To state a claim under Section 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 66 (E.D.N.Y. 2019).  Moreover, "each plaintiff must individually plead [each of] the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures."  *Id.* at 66-67 (internal quotation marks omitted).

In *Wright*, the plaintiffs claimed that "they purchased goods based on the Defendants' misrepresentations that doing so would increase their chances of winning a sweepstakes, prize, or drawing."  *Id.* at 63.  In assessing the allegations, the court explained that the plaintiffs "generally assert[] that the Defendants engaged in materially misleading behavior without setting forth any facts tying that behavior to the Plaintiffs' specific claims."  *Id.* at 67.  Moreover, the court explained,

---

[4] It is anticipated that Plaintiffs may argue they can plead a claim to equitable relief in the event their CLRA claim fails.  This position has already been rejected.  *See, e.g.*, *Rhynes v. Stryker Corp.*, No. 10-5619, 2011 WL 2149095 at *4 (N.D. Cal. May 31, 2011) ("Plaintiffs' argument that they will have no adequate remedy at law if their other claims fail is unavailing.  Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable.") (emphasis in original).

[5] "While GBL § 350 relates specifically to false advertising, 'the standard for recovery under § 350 . . . is otherwise identical to section 349.'"  *Segovia v. Vitamin Shoppe, Inc.*, No. 14-cv-7061, 2017 WL 6398747 at *3 (S.D.N.Y. Dec. 12, 2017).

the plaintiffs' complaint "fails to identify the specific advertisements seen by each plaintiff and provides no explanation why those advertisement[s] created a mistaken belief that purchasing a product would increase that plaintiff's chance of winning." *Id.* The court confirmed that "[w]ithout this information, the Plaintiffs cannot state a Section 349 claim." *Id.* The court further explained that "Section 349 does not create a strict liability scheme in which consumers may pursue private remedies simply because a defendant sent deceptions into the marketplace. To succeed, plaintiffs must tether that deception to their individual circumstances." *Id.* Indeed, general allegations are insufficient to state a claim under GBL § 349. *See Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (noting "blanket allegation" regarding defendant's representations was insufficient and granting motion to dismiss for failure to allege purported misrepresentations).

*Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) is also instructive. There, the plaintiff brought, among others, claims under GBL §§ 349 and 350, alleging that certain representations made about the defendant's products' effects on skin were misleading. *Id.* at 253-55. There, unlike here, the plaintiff actually identified the specific representations at issue. *Id.* at 254-55, 258. Nevertheless, the court noted that the plaintiff did not allege the ingredients in the products that did not have the intended effect or whether all of the products made the same claims and did not cite to anything that rebutted the defendant's statements regarding the products' effect. *Id.* at 258. As the Eastern District of New York concluded, "[i]t is not enough to simply allege, as the plaintiff does, that the . . . products do not and cannot work, and thus the advertisements espousing their positive qualities are misleading." *Id.* at 258-59.

The deficiencies here are more egregious than those in *Tomasino*, and the §§ 349 and 350 claims should be dismissed. Plaintiff Johnston specifies a single product he allegedly purchased: GNC's Mega Men Performance and Vitality Vitapaks. *See* ECF No. 1 at ¶ 32. While the Complaint generally alleges that this supplement is "deceptively" marketed as "having been subjected to the FDA's pre-market approval process; and/or intended to prevent, cure, or treat a disease or health-related condition linked to disease," *see* ECF No. 1 at ¶ 12, omitted from the Complaint are any allegations, whatsoever, regarding what statements on the product packaging were "misleading" or

gave rise to these beliefs.  Admittedly, Plaintiff Johnston does state that he "relied on GNC's representations that the Supplements had therapeutic value with respect to his prostate, circulation, and overall medical health," likely referring to "bullet points" on the packaging.  However, like in *Tomasino*, Plaintiff Johnston offers nothing to suggest that he did not receive the benefits he was expecting from the supplement.  Plaintiff Johnston merely suggests—without any specificity whatsoever—that the representations are false and misleading.  Such vague, conclusory allegations does not satisfy Rule 8, *Twombly*, and *Iqbal*, and his claims should be dismissed.

### E.   Plaintiffs' Unjust Enrichment Claim Is Insufficiently Pled For Failure To Plead Any Actionable Claim

As discussed above, Plaintiffs have failed to allege any particular representation that was false or misleading on the supplements' labeling.  "[W]hen a plaintiff fails 'to sufficiently plead an actionable misrepresentation or omission, his [or her] restitution claim must be dismissed.'"  *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016).  Because of the fundamental insufficiencies in the remainder of Plaintiffs' claims, their unjust enrichment claim should similarly be dismissed.

### F.   Plaintiffs Lack Standing To Seek Injunctive Relief

Plaintiffs' request for injunctive relief should be dismissed because (1) Plaintiffs alleged that the supplements were "worthless" and (2) Plaintiffs now know exactly how to interpret the labeling on the supplements.  Both of these bases, independently and collectively, support that Plaintiffs lack standing to seek injunctive relief.

"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'"  *Davidson*, 889 F.3d at 967.  "In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'"  *Id.* (emphasis in original).  "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Id.*  The Ninth Circuit has cautioned that "[i]n determining whether an injury is similar, we 'must be careful not to employ too narrow or technical an approach.

Rather, we must examine the questions realistically:  we must reject the temptation to parse too finely, and consider the context of the inquiry.'"  *Id.*

First, Plaintiffs' allegation that the supplements are "worthless" divests them of standing to pursue injunctive relief.  Plaintiffs allege, at least twice in their Complaint, that the supplements have no value.  *See, e.g.*, ECF No. 1 at ¶ 11 (claiming that "[m]isbranded dietary supplements . . . have no economic value and are worthless"); *id.* at ¶ 155 ("GNC sold Supplements to Plaintiffs that were not capable of being sold legally and that were worthless.").  The Ninth Circuit, in June of 2019, concluded that such allegations rid plaintiffs of standing to seek injunctive relief.  *See Min Sook Shin v. Umeken USA, Inc.*, --- Fed. App'x. ---, 2019 WL 2338467 at *1 (9th Cir. June 3, 2019) (affirming district court's dismissal of claim for injunctive relief because plaintiff "expressly alleged that Umeken's products were 'worthless'" and, as district court noted, "a plaintiff certainly will not purchase a worthless product in the future").  Here, too, this Court should not accept Plaintiffs' "unreasonable inferences" that they would again purchase in the future products which they expressly alleged were "worthless."  Plaintiffs' claim for injunctive relief, therefore, should be dismissed.

Second, Plaintiffs will not be "deceived" in the future because they now know how to interpret the supplements' labeling.  GNC acknowledges the Ninth Circuit's decision in *Davidson* in which the Ninth Circuit concluded that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase."  *Davidson*, 889 F.3d at 969.  However, "while *Davidson* held that plaintiffs '*may* have standing to seek an injunction against false advertising or labeling' in some circumstances, it did not hold that such standing automatically exists for all plaintiffs."  *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534, 2018 WL 6714323 at *4 (C.D. Cal. Oct. 17, 2018) (emphasis in original).

In *Davidson*, the plaintiff accused the defendant of engaging in false advertising relating to whether its wipes were "flushable."  *Davidson*, 889 F.3d at 961.  The Ninth Circuit, among other things, addressed whether the plaintiff had standing to seek injunctive relief.  *Id.* at 966.  The Ninth Circuit concluded that the plaintiff there did have standing based on her allegations that "she has 'no

way of determining whether the representation 'flushable' is in fact true' when she 'regularly visits stores . . . where Defendants' 'flushable' wipes are sold.'" *Id.* at 972.

The facts of this matter are far different than *Davidson*. Plaintiffs alleged that they believed the supplements were "intended to prevent, cure, or treat a disease or health-related condition linked to disease." *See* ECF No. 1 at ¶ 12; *see also* ECF No. 1 at ¶¶ 19, 26. Unlike in *Davidson* where the "flushable" wipes were intended to be "flushable," the supplements were never intended to prevent or treat disease, and Plaintiffs are now well-aware of this fact.

District Court cases decided after *Davidson* lead to the same conclusion. For example, *Cordes* involved a "slack-fill" claim relating to the defendant's covered pretzels. *Cordes*, 2018 WL 6714323 at *1. The court explained that the plaintiff was "on notice about potential underfilling" and that "he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel . . . [o]r, he could feel the bag to determine whether it is filled with pretzels or air." *Id.* at *4. The plaintiff, therefore, lacked standing to seek injunctive relief. *Id.* at *4.

*Rahman v. Mott's LLP*, No. 13-cv-03482, 2018 WL 4585024 (N.D. Cal. Sep. 25, 2018) came to a similar conclusion. The plaintiff asserted a claim that the defendant's use of the phrase "No Sugar Added" on its apple juice did not comply with certain FDA regulations. *Id.* at *1. The Court previously rejected a claim to injunctive relief after finding that the plaintiff was made aware that "No Sugar Added" meant that no sugar was added, not that it contained no sugar. *Id.* at *2. The Court reconsidered that decision after *Davidson* was decided. *Id.* The Court found that, even if the plaintiff intended to purchase the apple juice in the future, he "is now aware that such a belief [regarding the "No Sugar Added" statement] was unfounded." *Id.* at *3. Distinguishing *Davidson*, the Court explained that "[u]nlike *Davidson*, where a consumer's inability to rely on packaging misrepresentations in the future was an ongoing injury, Rahman is able to rely on the packaging now that he understands the 'No Sugar Added' label." *Id.*

Also similar is *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018). There, the plaintiff alleged that the defendant's product was misleading with respect to its "'net' carbohydrate content." *Id.* at *1. Distinguishing the type of injury as

asserted in *Davidson*, the *Fernandez* court explained that the plaintiff "now knows how Atkins goes about calculating its net carbs claims, and she will not be misled next time she goes to Wal-Mart or Target and looks at Atkins's labels." *Id.* at *15.  The court concluded that the plaintiff lacked standing to seek injunctive relief because there was no risk she would be misled by the "net carbs claims." *Id.*

The claims and alleged "injury" in this matter are more aligned with *Cordes*, *Rahman*, and *Fernandez* than they are with *Davidson*.  Plaintiffs now know that the supplements are not "drugs" and are not intended to prevent or cure any disease.  Accordingly, they are not at risk of being misled in the future, and they lack standing to seek injunctive relief.

### G.    Plaintiffs Do Not Have Standing To Bring Claims For Products They Did Not Purchase

Plaintiffs lack standing to assert claims regarding supplements they did not allegedly purchase.  *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-cv-02630, 2011 WL 1497096 (E.D. Cal. April 19, 2011) is instructive.  There, the plaintiff brought claims relating to alleged misrepresentations regarding the defendant's Stylus 1030 camera.  *Id.* at *1.  The plaintiff also attempted to bring claims relating to the defendant's Stylus 850 SW camera (which she did not purchase), alleging it had "the same underlying defects as the Stylus 1030" and the "same advertisements." *Id.* at *4.  Finding the plaintiff did not suffer any "economic injury from any alleged misrepresentations regarding the Stylus 850 SW," the court dismissed the plaintiff's claims relating to that product.  *Id.*

The Complaint's first paragraph asserts claims broadly as to, essentially, <u>all</u> GNC-brand supplements.  *See* ECF No. 1 at ¶ 1.  Plaintiffs then state "including, but not limited to" language and specify "GNC Men's Prostrate Formula Dietary Supplement," "GNC Diabetic Support Dietary Supplement," "GNC Preventive Nutrition Healthy Blood Pressure Formula Supplement," "GNC Women's Ultra Mega Active Supplement," and "GNC Mega Men Healthy Testosterone." *Id.*  Even this more specific allegation, however, does not relate to the supplements actually purchased by Plaintiffs.  Indeed, later in the Complaint, Plaintiffs clarified that they only purchased the following:

- • Plaintiff Arora:  GNC Men's Prostrate Formula and GNC Women's Ultra Mega Active
- • Plaintiff Clinton:  GNC Diabetic Support
- • Plaintiff Johnston:  GNC Mega Men Performance and Vitality Mega Vitapaks

*See* ECF No. 1 at ¶¶ 18, 25, 32.  Plaintiffs, collectively, purchased only four (4) of the supplements out of seemingly <u>all</u> GNC-brand supplements purportedly at issue.  Under the *Mlejnecky* analysis, Plaintiffs lack standing to bring a claim for any supplement other than those four (4) they allegedly purchased, and claims relating to any other GNC-brand supplement should be dismissed.

Alternatively, Plaintiffs lack standing under this Circuit's "substantially similar" analysis with respect to supplements not purchased.  Under that analysis, a plaintiff may have standing to "bring claims for products they did not purchase 'as long as the products and alleged misrepresentations are substantially similar.'"  *Cordes*, 2018 WL 6714323 at *5.  However, this analysis cannot be performed without an analysis in the Complaint regarding the supplements not purchased.  *See id.* ("But the complaint is completely silent as to the non-fudge-covered varieties of Defendant's pretzels.  Given the complete lack of *any* allegations regarding Defendant's other products, the Court finds that Plaintiff has failed to plausibly allege that he has standing to bring claims based on those products.") (emphasis in original).  As discussed above, Plaintiffs' Complaint is sparsely-pled regarding the supplements they *did* purchase.  It follows that the Complaint is void of allegations regarding what was purportedly false or misleading regarding the labeling on any other GNC-brand supplement and whether those representations were "substantially similar" to what Plaintiffs claim misled them.  Accordingly, Plaintiffs fail to sufficiently allege standing for any GNC-brand supplement they did not purchase.

## IV.    CONCLUSION

For the foregoing reasons, GNC respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated:  July 19, 2019                          COZEN O'CONNOR

By:    */s/ Andrew M. Hutchison*
       Andrew M. Hutchison
       Attorneys for Defendant
       GNC Holdings, Inc.