1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10              San Francisco Division

11  RICHA ARORA, RANDY CLINTON, and          Case No. 19-cv-02414-LB
    WALTER JOHNSON, individually and
12  behalf of all others similarly situated.,

13              Plaintiffs,                   **ORDER DENYING GNC'S MOTION
                                              TO DISMISS**
14          v.
                                             Re: ECF No. 18
15  GNC HOLDINGS, INC.,

16              Defendant.

17

18                        **INTRODUCTION**

19      The plaintiffs, who live in California (Arora and Clinton) and New York (Johnson), bought

20  GNC dietary supplements and then — on behalf of themselves and putative nationwide,

21  California, and New York classes of consumers — sued GNC Holdings, claiming that labels

    describing the supplements' functions (such as "Diabetic Support") were unlawful because they
22
    did not include a disclaimer that is required under the Federal Food, Drug and Cosmetics Act
23
    ("FFDCA" or "Act"), 21 U.S.C. § 301 *et seq.*, and the regulations implementing the Act.[1] Under
24
    the Act, if a product's label describes the supplement's function, then there must be an
25

26

27  _____
    [1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint
28  citations are to the ECF-generated page numbers at the top of documents.

accompanying disclaimer (on the same panel) that the Food and Drug Administration ("FDA") has not evaluated the description of function and that the supplement is not intended to diagnose, treat, cure, or prevent any disease.[2] 21 U.S.C. §§ 321, 343; 21 C.F.R. §§ 101.93(d). The plaintiffs also allege that in its marketing of the supplements, GNC "compounds" the harm from omitting the disclaimer by using misleading phrases (such as "clinically studied," "scientifically designed," "physician formulated,' or "physician endorsed"), using medical symbols, and referring to diseases.[3]

The plaintiffs raise seven state-law claims: (1) unlawful conduct — based on the omitted FFDCA disclaimer and violations of two California consumer-protection statutes, the False Advertising Law ("FAL") and the Consumers Legal Remedies Act ("CLRA") — in violation of California's Unfair Competition Law ("UCL") (on behalf of the California named plaintiffs and a California subclass); (2) unfair and fraudulent conduct, in violation of the UCL (on behalf of the California named plaintiffs and the California subclass); (3) false advertising, in violation of the FAL (on behalf of the California named plaintiffs and the California subclass); (4) deceptive practices, in violation of the CLRA (on behalf of the California named plaintiffs and the California subclass); (5) deceptive practices, in violation of New York's Consumer Protection from Deceptive Acts and Practices Law (hereafter, "New York Consumer Protection Law") (on behalf of the New York named plaintiff and the New York subclass); (6) false advertising, in violation of the New York Consumer Protection Law (on behalf of the New York named plaintiff and the New York subclass); and (7) unjust enrichment (quasi-contract) (on behalf of the named plaintiffs and the nationwide class).[4]

GNC moved to dismiss the following claims on the following grounds: (1) claim one (unlawful conduct under the UCL), on the ground that the plaintiffs lack standing because they did not allege reliance sufficiently under relevant precedent; (2) claims two, three, and four

---

[2] *Id.* at 3 (¶ 5).

[3] *Id.* at 4 (¶ 13).

[4] *Id.* at 21–30 (¶¶ 100–159).

(essentially, deceptive practices under the UCL, FAL, and CLRA), on the ground that the plaintiffs did not allege fraud with particularity; (3) claims one, two, and three (the UCL and FAL claims), on the ground that the weight of the authority requires dismissal of UCL and FAL equitable claims when plaintiffs assert a CLRA claim; (4) claims five and six (deceptive practices and false advertising in violation of the New York Consumer Protection Law), on the ground that the plaintiffs did not identify the false and misleading statements; and (5) claim seven (unjust enrichment), on the ground that the plaintiffs did not allege any actionable conduct by GNC.[5] GNC also contends that the plaintiffs lack standing (1) to seek injunctive relief and (2) for any relief for products that they did not purchase.[6] The court denies the motion to dismiss.

## STATEMENT[7]

### 1.  The Overall Nature of the Claims and the Regulatory Scheme

The complaint first specifies that the plaintiffs seek recovery based on GNC's practices regarding the marketing and sale of its "proprietary brand dietary supplements . . . including but not limited to" GNC Men's Prostate Formula Dietary Supplement, GNC Diabetic Support Dietary Supplement, GNC Preventive Nutrition Healthy Blood Pressure Formula Supplement, GNC Women's Ultra Mega Active Supplement, and GNC Mega Men Healthy Testosterone.[8]

The plaintiffs then categorize the three "types of claims" that they assert. First, they assert unlawful claims based on the FFDCA violation, which (they allege) is incorporated into California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), which is actionable under

---

[5] Mot. – ECF No. 18 at 7–9.

[6] Id. at 21–25.

[7] The facts in the Statement are from the complaint, including allegations about the statutory and regulatory scheme. The parties do not separately brief the statutory and regulatory scheme because they dispute only issues such as standing and whether the plaintiffs plausibly pleaded the claims (and not the overall legal framework). The plaintiffs' allegations about the legal framework thus are undisputed for the purpose of this motion.

[8] Compl. – ECF No. 1 at 2 (¶ 1).

the UCL.[9] Second, they assert "misleading and deceptive" marketing claims "because GNC labeled, marketed, and sold the Supplements in a manner that is unfair, deceptive, and untrue in violation of California's UCL and New York's Consumer Protection from Deceptive Acts and Practices Law . . . ."[10] Third, they assert common-law claims for unjust enrichment.[11]

The plaintiffs then describe the regulatory scheme for the products and the legal basis for their claims.

> 5. With respect to Plaintiffs' "unlawful" claims, GNC is prohibited from labeling, marketing, or selling dietary supplements bearing claims that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, [or that] characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function" (known as "structure/function claims"), unless the label carries a prominent disclaimer on each panel bearing such claims. *See* 21 U.S.C. §§ 321(g)(1), 331(d), 343(r)(1)(B), 343(r)(6), 355(a); 21 C.F.R. § 101.93(d) ("On product labels and in labeling (e.g., pamphlets, catalogs), the disclaimer shall appear on each panel or page where there [is a structure/function claim].").

> 6. The disclaimer must be prominent and bolded, and it must read: These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease. 21 U.S.C. § 343(r)(6)(C); *see also* 21 C.F.R. § 101.93(b)-(e).[12]

The plaintiffs allege that "GNC Supplements" do not have the required disclaimers "on all panels with structure/function claims, and/or the disclaimer lacks the prominence required."[13] As a result, they assert, GNC's failure to include the disclaimer means that the supplements are "misbranded and unlawful. 21 U.S.C. § 343(r)(1)(B), (r)(6); 21 C.F.R. § 101.93(d)."[14]

GNC's sale of the supplements is also unlawful, the plaintiffs allege, because the supplements are "drugs" that lack FDA pre-market approval.[15] More specifically, the supplements are "'drugs'

---

[9] *Id.* (¶ 2).

[10] *Id.* (¶ 3).

[11] *Id.* (¶ 4).

[12] *Id.* at 3 (¶¶ 5–6).

[13] *Id.* (¶ 7).

[14] *Id.*

[15] *Id.* (¶¶ 8–11).

under the FFDCA since GNC markets them with structure/function claims but does not include the disclaimers. *See* 21 U.S.C. §§ 321(g)(1), 343(r)(6). In order to avoid being regulated as drugs under the FFDCA, dietary supplements bearing structure/function claims must comply with the disclaimer requirements. *Id.*"[16]

Also, "[d]rugs require pre-market approval from the . . . FDA[]. 21 U.S.C. §§ 331(d), 355(a)."[17] "Upon information and belief, GNC lacks pre-market approval for its Supplements, rendering them not just misbranded but unapproved drugs.[18] "Misbranded dietary supplements and/or unapproved drugs are unlawful and cannot be sold legally. 21 U.S.C. §§ 331, 333. Under Section 110760 of the Sherman Law, they have no economic value and are worthless."[19]

For claims predicated on GNC's "deceptive and misleading" practices, "GNC deceptively labels, markets, and sells the Supplements as having been subjected to the FDA's pre-market approval process; and/or intended to prevent, cure, or treat a disease or health-related condition linked to disease."[20] It "compounds" its deceptive omission of the required disclaimer by using "misleading phrases like 'clinically studied,' 'scientifically designed,' 'physician formulated,' or 'physician endorsed,' and [using] . . . medical symbols, and/or by referencing diseases and/or conditions equated with disease in its marketing of the Supplements."[21]

In a later section of the complaint, the plaintiffs explain more about the regulatory framework. Under the FFDCA, a "drug" is defined, in part, as an "'article[] intended for use in the in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals'" or an "'article[] (other than food) intended to affect the structure or any function of the body of man or other animals.'"[22] Under 21 U.S.C. §§ 331(d) and 355(a), the FDA must approve new drugs

---

[16] *Id.* (¶ 8).

[17] *Id.* (¶ 9).

[18] *Id.* (¶ 10).

[19] *Id.* (¶ 11).

[20] *Id.* at 3–4 (¶ 12).

[21] *Id.* at 4 (¶ 13).

[22] *Id.* at 9 (¶ 52) (citing the FFDCA, 21 U.S.C. § 321(g)(1)(B–C)).

before they can be sold on the market.[23] The FFDCA creates an exemption from this pre-approval process for supplements "'intended to affect the structure or function of the body'" if the supplements carry a prominent FDA disclaimer: "'This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.'"[24] The disclaimer "must appear 'on each panel or page' of a supplement label or package that bears a health-related claim, 21 C.F.R. § 101.93(d), and it must be prominent. 21 U.S.C. § 343(r)(6)."[25] "To be prominent, the disclaimer may not be crowded with non-required, or voluntary, information or imagery and additionally must use bolded font *at least* 1/16th of an inch in size."[26] "Failure to abide by the disclaimer requirements renders non-compliant supplements misbranded, unapproved, and unlawful drugs under federal law. 21 U.S.C. §§ 321(g)(1), 331(d), 343(r)(6), 355(a)."[27] California's Sherman Law expressly adopted federal labeling requirements.[28]

The complaint explains why the regulatory scheme is important for consumer safety. The disclaimer requirement aligns with the FDA's recognition that "'few dietary supplements have been the subjects of adequately designed clinical trials.'"[29] Without the disclaimer, structure/function claims convey therapeutic drug claims, thereby encouraging self-treatment without the benefit of a medical diagnosis or treatment.[30] The point of the disclaimers are to "'make sure that consumers understand that structure/function claims are not reviewed by [the]

---

[23] *Id.* (¶ 43) & n. 4 (citing FFDCA regulations).

[24] *Id.* (¶¶ 54–55) (citing the FFDCA, 21 U.SC. § 343(r)(6), and 21 C.F.R. § 101.93(b–d)).

[25] *Id.* at 10 (¶ 60).

[26] *Id* at 11 (¶ 63) (citing Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements, 62 F3d. Reg. 49,859, 39,865–66 (Sept. 23, 1997); 21 C.F.R. § 101.93(e)).

[27] *Id.* (¶ 64).

[28] *Id.* (¶ 65) (citing Cal. Health & Safety Code § 110100).

[29] *Id.* at 9–10 (¶ 56) (citing Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of Body (hereinafter "Regulations"), 65 Fed. Reg. 1000, 1003, 2000 WL 4559 (Jan. 6, 2000).

[30] *Id.* at 10 (¶¶ 57–58) (citing Regulations, 65 Fed. Reg. at 1001, 1005, 1013, 1044–45).

FDA prior to marketing, and to caution consumers that dietary supplements bearing such claims *are not for therapeutic uses*.'"[31]

### 2.   The Parties and the Plaintiffs' Purchases

GNC is a Delaware corporation with its principal place of business in Pennsylvania.[32] It owns, operates, and franchises 4,026 retail locations (including 2,989 that it owns and manages directly and 269 in California alone).[33] GNC requires all retail locations to display and sell GNC supplements, and it controls the marketing and labeling for its supplements.[34]

Richa Aurora and Randy Clinton reside in California, and Walter Johnston resides in New York.[35] During the relevant class period, they bought GNC-branded products.[36] The complaint has the following general allegations about the plaintiffs' reliance on the labels and marketing of the supplements.

> 14.  Plaintiffs and the members of the Class reviewed and reasonably relied on GNC's Supplement labels and packaging when purchasing them and were misled by GNC's marketing.
>
> 15.  Had Plaintiffs known that the Supplements were misbranded, unlawful, lacked government review and approval, and/or were not intended to treat, cure, or prevent any disease (that is, were not intended for therapeutic purposes), Plaintiffs would not have purchased them.
>
> 16.  Owing to their reliance on GNC's deceptive labeling, marketing, and sales of the Supplements, Plaintiffs and the members of the Class purchased GNC Supplements believing them to have characteristics and qualities that they do not have. Plaintiffs and the members of the Class have been injured because they would not have purchased the Supplements or paid as much had they known the truth.[37]

---

[31] *Id.* (¶ 59) (citing Regulations, 65 Fed. Reg. at 1007) (emphasis in complaint).

[32] *Id.* at 6 (¶¶ 38–39).

[33] *Id.* (¶ 40).

[34] *Id.* (¶¶ 40–41).

[35] *Id.* at 4 (¶ 17), 5 (¶¶ 24, 31).

[36] *Id.* at 4 (¶ 18), 5 (¶ 25), 6 (¶ 32).

[37] *Id.* at 3–4 (¶¶ 14–16).

The plaintiffs allege the following about their individual purchases and reliance.

Ms. Aurora bought the following GNC supplements ("and other Supplements") from the GNC store at the Northpoint Shopping Center on Bay Street in San Francisco, California: (1) "GNC Prostate Health Supplement" for her father and (2) "GNC Women's Ultra Mega Active Supplement" for her own use.[38] Mr. Clinton bought "GNC Diabetic Support Supplement[] and other Supplements" from the GNC store at the West Valley Mall in Tracy, California.[39] Mr. Johnston bought "GNC Mega Men Performance and Vitality Mega Vitapaks, among other Supplements," from the GNC store at the Chautauqua Mall on East Fairmont Avenue in Lakewood, New York, and in in Pennsylvania.[40]

The plaintiffs believed that the supplements were "lawful, correctly branded, subject to a governmental review and approval process, and had therapeutic value, including that they were intended to prevent or treat disease, including" prostate disease (for Ms. Arora), diabetes (for Mr. Clinton), and "prostate, circulation, and overall medical health" (for Mr. Johnston).[41] Ms. Arora and Mr. Clinton relied on GNC's marketing of the supplements ("both implied and expressed") when they bought them.[42] All paid more for the supplements, and bought more of them, than they would have "had [they] known the truth about" the products, and thus they all lost money (by paying more for the products).[43] All would buy the supplements in the future if they knew that GNC's marketing and sales of the supplements were "lawful, truthful, and non-misleading," but they cannot buy them now because they "cannot be confident" that the sales, labels, and advertising are lawful, truthful, and non-misleading.[44]

In a separate section titled "Economic Injury," the plaintiffs assert the following:

---

[38] *Id.* at 4 (¶ 18) (also alleging that she made "other purchases").

[39] *Id.* at 5 (¶ 25).

[40] *Id.* at 6 (¶ 32).

[41] *Id.* at 4 (¶ 19), 5 (¶ 26), 6 (¶¶ 33–34).

[42] *Id.* at 4 (¶ 20), 5 (¶ 27).

[43] *Id.* at 4–5 (¶¶ 21–22, 28–29), 6 (¶¶ 35–37).

[44] *Id.* at 5 (¶¶ 23, 30), 6 (¶ 37).

United States District Court
Northern District of California

77.  When purchasing the GNC Supplements, Plaintiffs read and relied on GNC's labeling and marketing claims.

78.  Based on the Supplements' labeling, Plaintiffs believed the GNC Supplements had the aforementioned characteristics and benefits, including that they were lawful.

79.  As a result, Plaintiffs received GNC Supplements that lacked the characteristics and/or benefits that they reasonably believed the products had.

80.  Plaintiffs would not have purchased the GNC Supplements, purchased as many of them, and/or paid as much for them absent these sales, misrepresentations, and labeling and marketing practices.

81.  Plaintiffs lost money as a result of GNC's unlawful and deceptive and misleading conduct because Plaintiffs did not receive the products for which they believed they paid.

82.  Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amounts they paid for the GNC Supplements they purchased.

83.  Plaintiffs would purchase the GNC Supplements again in the future should they have the characteristics and/or the benefits marketed and labeled.

84.  By engaging in unlawful sales and/or deceptive and misleading marketing, GNC reaped, and continues to reap, increased sales and profits, including with respect to its competitors.

85.  GNC knows that the qualities and characteristics it labels and markets, as well as its omissions, are material to a consumer's decision to purchase its Supplements.

86.  GNC deliberately cultivates these misperceptions through its marketing and labeling of its Supplements. Indeed, GNC relies and capitalizes on consumer misconceptions about its Supplements.[45]

## 3.  The Labels

The plaintiffs allege that GNC fails to include the required disclaimer "in labeling and marketing its Supplements."[46] The complaint gives some examples.

"GNC's Diabetic Supplement . . . omits the disclaimer from the front panel of the packaging . . . or the side panel, despite the presence of structure/function claims on both panels."[47]

---

[45] *Id.* at 18–19 (¶¶ 77–86).

[46] *Id.* at 12 (¶ 66)

[47] *Id.* (¶¶ 67–68).





GNC also omits the disclaimer from the front panel of the Diabetic Supplement and instead puts a non-compliant disclaimer on the back panel, "where, even there, it is rendered non-prominent by a variety of voluntary claims."[50]

The label for the GNC Mega Men Diabetic Support supplement makes the following claims: "Multivitamin with premium ingredients to support glucose metabolism;" "Provides key nutrients to help promote normal glucose utilization & insulin production;" and "Supports circulatory, heart & eye health with advanced nutrient blends." The side panel makes the following claim: "**Why should I use it?** It is scientifically designed for the special dietary needs of people with diabetes. Use it with the enclosed nutritionally balanced diet suitable for persons with diabetes to help maintain healthy blood sugar levels."



51

The plaintiffs next give examples of GNC's deceptive and misleading labeling and packaging claims. "GNC compounds its deceptive marketing with authoritative sounding embellishments like 'clinically studied,' 'scientifically formulated,' and 'physician endorsed,' and by implying therapeutic properties by referencing diseases or conditions linked to disease."[52] Its website

---

[50] *Id.* (¶ 69).

[51] *Id.*

[52] *Id.* at 14 (¶ 73).

"embraces the deception."[53] For example, a verified purchaser of Diabetes Support posted that it kept her "glucose and A1C in check," another said that "GNC Mega Men Diabetic Support . . . help[ed] in keeping my sugars down," and a third posted that it helped "stabilize sugars."[54]

The plaintiffs then allege that "GNC's omission of the mandatory disclaimers from Supplement panels is systemic"[55] and identify the following front labels that lack disclaimers.



[56]

United States District Court
Northern District of California



57



58

---



---

[59] *Id.*

[60] *Id.* at 17.



[61]

As an example of a product that properly displays the "mandated disclosure on the front panel of their labels and elsewhere where structure/function claims appear," the plaintiffs identify Target's "Up & Up" dietary supplements, where the "disclaimers are not so crowded by voluntary statement and imagery as to lose prominence."[62]



[63]

### 4. Classes

The complaint defines the following subclasses as, collectively, "constitut[ing] the 'Class.'"[64]

---

[61] *Id.*

[62] *Id.* at 18 (¶ 76).

[63] *Id.* at 18.

[64] *Id.* at 19 (¶¶ 87–88).

> **The California Subclass**. All persons residing in the State of California who purchased one or more GNC proprietary brand supplements within the applicable limitations period.
>
> **The New York Subclass**. All persons who purchased one or more of GNC proprietary brand supplements in the State of New [York] within the applicable limitations period.
>
> **The Nationwide Subclass.** All persons in the United States who purchased one or more GNC proprietary brand supplements within the applicable state limitations periods.[65]

### 5. Relevant Procedural History

The complaint has seven state-law claims: (1) unlawful conduct — based on the omitted FFDCA disclaimer and violations of the FAL and CLRA — in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* (on behalf of the California named plaintiffs and a California subclass); (2) unfair and fraudulent conduct, in violation of the UCL (on behalf of the California named plaintiffs and the California subclass); (3) false advertising, in violation of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.* (on behalf of the California named plaintiffs and the California subclass); (4) deceptive practices, in violation of the CLRA, Cal. Civ. Code §§ 1750 *et seq.* (on behalf of the California named plaintiffs and the California subclass); (5) deceptive practices, in violation of the New York Consumer Protection Law, N.Y. Gen. Bus. Law §§ 349, 350 (on behalf of the New York named plaintiff and the New York subclass); (6) false advertising, in violation of the New York Consumer Protection Law (on behalf of the New York named plaintiff and the New York subclass); and (6) unjust enrichment (quasi-contract) (on behalf of the named plaintiffs and the nationwide class).[66] All parties consented to magistrate-judge jurisdiction.[67] The court held a hearing on GNC's motion to dismiss on October 17, 2019.

---

[65] *Id.* (¶ 87).

[66] *Id.* at 21–30 (¶¶ 100–159).

[67] Consents – ECF Nos. 10, 14.

## STANDARD OF REVIEW

GNC moves to dismiss the claims for lack of standing and for failure to state a claim, including a failure to plead fraud with particularity under Rule 9(b).[68] The relevant standards are as follows.

### 1. Rule 12(b)(1)

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). This is a facial attack. The court thus "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

### 2. Rule 12(b)(6) and Rule 9(b)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

---

[68] Mot. – ECF No. 18 at 15–17.

complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

### 3. Leave to Amend

If a court dismisses a complaint, it must give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### ANALYSIS

GNC moves to dismiss the following claims on the following grounds: (1) claim one (unlawful conduct in violation of the UCL), on the ground that the plaintiffs lack standing because they did not allege reliance sufficiently; (2) claims two, three, and four (essentially, fraudulent and deceptive practices in violation of the UCL, FAL, and CLRA), on the ground that the plaintiffs did not allege fraud with particularity under Rule 9(b); (3) claims one, two, and three (the UCL and FAL claims), on the ground that the weight of the authority requires dismissal of UCL and FAL equitable claims when plaintiffs assert a CLRA claim; (4) claims five and six (deceptive practices and false advertising in violation of the New York Consumer Protection Law), on the ground that the plaintiffs did not identify the false and misleading statements; and (5) claim seven (unjust enrichment), on the ground that the plaintiffs did not allege any actionable conduct by GNC.[69] It also contends that the plaintiffs lack standing to seek injunctive relief or relief for products that they did not purchase.[70]

The court denies the motion to dismiss.

### 1. Standing and Unlawful Conduct under the UCL (Claim One)

The UCL prohibits business practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200; *Pastoria v. Nationwide Ins.,* 112 Cal. App. 4th 1490, 1496 (2003). In claim one, the plaintiffs allege unlawful conduct by GNC's omission of the disclaimer (in violation of the FFDCA) and marketing practices (in violation of the FLA and CLRA). GNC does not contest

---

[69] Mot. – ECF No. 18 at 7–9.

[70] *Id.* at 24–25.

the sufficiency of the plaintiffs' allegations about its allegedly unlawful conduct. Instead, it contends that the plaintiffs do not have standing for a UCL claim because their allegations about reliance are too conclusory.[71]

To show standing under the UCL, the plaintiffs must allege that they "suffered injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. For claims (like the one here) that are based on misrepresentation, "as a result of" (under section 17204) "means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326 (2011) (quotation and citation omitted). Similarly, under the CLRA, the plaintiffs must establish actual reliance and economic injury. *Kennard v. Lamb Weston Holdings Inc.*, No. 18-cv-04665-YGR, 2019 WL 4278940, at *3 (N.D. Cal. Sept. 10, 2019) (citation omitted).

The plaintiffs' allegations about reliance are that they read the labels, believed the claims (about the therapeutic value for the prevention and treatment of the specific diseases, such as prostate disease and diabetes) for the specific products that they bought, paid more for the supplements than they would have (had they known the "truth about the products"), and lost money by paying more.[72] They would buy the supplements if they knew that the labels and marketing were truthful, and they will not now because they cannot be confident that they are truthful.[73] Key to their theory of prosecution is that the lack of the required disclaimer mattered, given the claims of therapeutic value.[74]

In cases involving allegedly unlawful labels, courts hold that similar allegations sufficiently allege reliance that conveys UCL standing. For example, in *Ogden v. Bumble Bee Foods LLC,* the plaintiffs challenged Bumble Bee's claims of the nutrient content and health value of its products (such as "Excellent Source Omega-3" coupled with an asterisk directing the consumer to the actual Omega-3 quantity). No. 5:12-cv-01828-LHK, 2014 WL 27527, at *2 (N.D. Cal. Jan. 2,

---

[71] *Id.* at 11–14.

[72] Compl. – ECF No. 1 at 4–5 (¶¶ 19–20, 28–29), 6 (¶¶ 36–37).

[73] *Id.* at 5 (¶¶ 23, 30), 6 (¶ 37).

[74] *E.g., id.* at 4 (¶ 14).

2014). The plaintiff testified that she read, relied on, and was deceived by Bumble Bee's representations, causing her to pay more for the products than she was willing to pay. *Id.* at *3, *9–10. The court held that these allegations were sufficient to create a genuine issue of material fact that the plaintiff had statutory standing to pursue her UCL, FAL, and CLRA claims regarding the Omega-3 nutrient-content claims, thereby defeating Bumble Bee's summary-judgment motion on the issue. *Id.* at *9–10.

GNC nonetheless contends that the plaintiffs' allegations are insufficient because the plaintiffs are — essentially — holding it strictly liable for its alleged illegal omission of the disclaimer, they are making only conclusory allegations about their reliance on the labels, and those conclusions fall short of the level of specificity needed to establish standing.[75] The cases that GNC cites do not compel the conclusion that the plaintiffs lack standing under the UCL.

GNC first cites *Swearingen v. Late July Snacks LLC* for the proposition that the plaintiffs' UCL claim — that GNC violated the Sherman Law — is an attempt to hold it strictly liable under the UCL.[76] *See* No. 13-cv-04324-EMC, 2017 WL 4641896, at *3 (N.D. Cal. Oct. 17, 2017). The plaintiffs in *Swearingen* challenged the defendant's use of the term "evaporated cane juice" on certain food products, claiming it was unlawful because it violated an FDA regulation that ingredients be listed by their common names. *Id.* at *1, 3 (citing 21 C.F.R. § 102.5, which is incorporated into the Sherman Law, Cal. Health & Safety Code § 110100). The plaintiffs contended that because the Sherman Law did not require proof of reliance, they did not need to show reliance under the UCL either. *Id.* at *2. Applying *Kwikset*, the court held that the plaintiffs' claim of falsely advertised food sounded in misrepresentation and that the plaintiffs therefore must allege (and ultimately prove) that they relied on the deceptive label "evaporated cane juice" in order to show that they were harmed "as a result of" the deceptive label. *Id.* at *3 (quoting Cal. Bus. & Prof. Code § 17204). "In sum, Plaintiffs cannot seek UCL relief based on a strict liability

---

[75] Mot. – ECF No. 18 at 11–14.

[76] *Id.* at 12.

theory." *Id.* The court granted the defendants' motion to dismiss any claim under the UCL based on strict liability without a showing of reliance. *Id.*

But that holding did not result in dismissal of the claim because the plaintiffs in *Swearingen*, like the plaintiffs here, alleged that they read the labels and relied on the labels' representations. Citing its earlier order, the court held that the plaintiffs adequately pleaded reliance. *Id.* (citing Order, No. 3:13-cv-04324-EMC – ECF No. 116 (N.D. Cal. May 5, 2017). In the earlier order, the court held that the plaintiffs adequately alleged reliance by (1) establishing that a reasonable consumer would be misled by the term "evaporated cane juice" (given that sugar is a known health risk that consumers should avoid) and (2) explaining that they believed "evaporated cane juice" was healthier than sugar (an interpretation consistent with the FDA's determination that the "evaporated cane juice" "'falsely suggests that the sweeteners are juice.'" Order, No. 3:13-cv-04324-EMC – ECF No. 116 at 6–9 (California courts have adopted a "reasonable consumer" standard for adjudicating the materiality of a misrepresentation, and consumers must show that members of the public are likely to be deceived by the business practice) (citing *In re Tobacco II Cases*, 4 Cal. 4th 208, 327 (2009), and *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962–63 (N.D. Cal. Mar. 25, 2013), *aff'd in part and rev'd in part on other grounds*, 660 F. App'x 531 (9th Cir. 2016), among other cases).

Similarly, the plaintiffs here do not contend that that the label is unlawful merely because it omits the required FDA disclaimer. It is unlawful because the plaintiffs read the labels and relied on their claims of therapeutic value that were not qualified by the required disclaimer. Like the plaintiffs in *Swearingen*, the plaintiffs did more than allege that the label was unlawful. They adequately pleaded reliance.

GNC also cites *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016), to support its contention that the plaintiffs attempt to hold it strictly liable under the UCL for the label.[77] In *Brazil*, the plaintiffs challenged "all natural" claims for packaged fruit as unlawful under the UCL. *Id.* But unlike the plaintiffs here, the *Brazil* plaintiff did not read the label, thus

---

[77] *Id.*

did not rely on the representation in making the purchase, and could not state a claim based on "this theory of misrepresentation." *Id.* (citing *Kwikset*, 51 Cal. App. 4th at 326 & n.9).

The other cases that GNC cites also address the need to plead reliance and do not alter the conclusion here that the plaintiffs pleaded reliance sufficiently to establish UCL standing. *See, e.g.*, *Pratt v. Whole Foods Market Ca., Inc.*, No. 5:12-cv-05652-EJD, 2014 WL 1324288, at *8 (N.D. Cal. Mar. 13, 2014) (plaintiff must plead reliance and cannot assert an unlawful UCL claim merely because the product's label violates a law); *Kane v. Chobani Inc.*, No. 12-cv-02425-LHK, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 13, 2013) (plaintiffs never read the online "no sugar added" claims); *Maxwell v. Unilever U.S., Inc*, No. 5:12-cv-01726-EJD, 2013 WL 1536761, at *4 (N.D. Cal. Mar. 29, 2018) (finding implausible the plaintiff's contention that she "read the words 'phosphoric acid' and 'citric acid' (or otherwise read the Pepsi label) and . . . [was] led to believe that Pepsi did not contain artificial flavors.").

In sum, the plaintiffs' allegations plausibly establish UCL standing.

## 2. Fraud Claims Under the UCL, FAL, and the CLRA (Claims Two Through Four)

In claims two through four, the plaintiffs challenge GNC's deceptive marketing and labeling practices under the UCL, FAL, and CLRA. GNC moves to dismiss the claims on the ground that the plaintiffs do not identify the deceptive statements that they are challenging and instead make only conclusory allegations about the labels that do not satisfy Rule 9(b)'s requirement that the plaintiffs must plead fraud with particularity.[78] The plaintiffs do not dispute that they need to plead fraud with particularity but contend that they satisfied Rule 9(b), particularly because their claims that the labels are deceptive are grounded in GNC's failure to include the required FDA disclaimer.[79] GNC responds that no reasonable consumer would be misled by the lack of the disclaimer.[80] The court denies the motion to dismiss.

---

[78] *Id.* at 15–17.

[79] Opp'n – ECF No. 25 at 15–18.

[80] Reply – ECF No. 36 at 11.

The "reasonable consumer" test governs false advertising and unfair or fraudulent business-practice claims under the UCL, FAL, or CLRA. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Under the "reasonable consumer" standard, the plaintiff must "show that members of the public are likely to be deceived." *Id.* (quotation marks and citations omitted). Generally the question whether a business practice is deceptive is an issue of fact not appropriate for decision on a motion dismiss. Nonetheless, dismissal is appropriate if a plaintiff fails to show the likelihood that a reasonable consumer would be deceived. *Freeman*, 68 F.3d at 289-90.

The issue is whether the plaintiffs have alleged enough to show that a reasonable consumer would be deceived. GNC contends that they have not because — in its view — they make only general attacks, such as "'GNC deceptively labels, markets, and sells the Supplements as having been subjected to the FDA's pre-market approval process; and/or intended to prevent, cure, or treat a disease or health-related condition linked to disease.'"[81] Another example is the general allegation that GNC "'compounds its deception . . . with misleading phrases like "clinically studied," "scientifically designed," "physician formulated," or "physician endorsed," and with medical symbols, and/or by referencing diseases and/or conditions equated with disease in its marketing of Supplements.'"[82] The complaint does not allege that the phrases are misleading or point to the statements that reference "'diseases and/or conditions.'"[83] The plaintiffs' individual allegations fare no better, GNC asserts, because they are conclusions that the supplements were "lawful, correctly branded, subject to a governmental review and approval process, and had therapeutic value, including that they were intended to prevent or treat" the specific diseases (such as prostate disease or diabetes).[84]

---

[81] Mot. – ECF No. 18 at 16 (quoting Compl. – ECF No. 1 at 3–4 (¶ 12)).

[82] *Id.* (quoting Compl. – ECF No. 1 at 4 (¶ 13)).

[83] *Id.* (quoting Compl. – ECF No. 1 at 4 (¶ 13)).

[84] *Id.* at 16–17 (quoting Compl. – ECF No. 1 at 4–5 (¶¶ 19–20, 26–27)).

But as the plaintiffs point out, they make more than general attacks. Their claims of deception are predicated on GNC's omission of the required disclaimer that "'This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.'"[85] Moreover, the complaint has examples of labels that do not have the required disclaimer and that make therapeutic claims.[86] For example, as summarized in the Statement, the label for the Mega Men Diabetic Support supplement claims that it contained premium ingredients to support glucose metabolism, had key nutrients to promote normal glucose utilization and insulin production, and supported circulatory, heart, and eye health with advanced nutrient brands.[87] On its side label, it promotes its use as scientifically designed for the special dietary needs of people with diabetes and with a companion "nutritionally balanced diet suitable for persons with diabetes to help maintain healthy blood sugar levels and improve circulation and eye health."[88] Named plaintiff Clinton relied on those representations that the supplement had "'therapeutic value'" and was "'subject to a governmental review and approval process.'"[89] Instead, the plaintiffs contend, he was deceived.[90]

Like the plaintiffs in *Swearingen*, the plaintiffs have pleaded adequately that they were deceived and that reasonable consumers would be misled by therapeutic claims that would be evaluated differently if the label had the required disclaimer. *Cf.* Order, No. 3:13-cv-04324-EMC – ECF No. 116 at 6–9. That approach is consistent with the FDA's recognition that dietary supplements generally are not the subject of adequately designed clinical trials and its exempting supplements affecting "the structure or function of the body" only if the disclaimer appears on each panel of a label that has a health-related claim.[91] *Cf. id.* (evaluating a consumer's reasonable

---

[85] Opp'n – ECF No. 25 at 16 (quoting and citing Compl. – ECF No. 1 at 3 (¶¶ 6–11), 9–17 (¶¶ 52–75)).

[86] *Id.* at 17.

[87] *Id.*

[88] *Id.*

[89] Compl. – ECF No. 1 at 5 (¶ 26); Opp'n – ECF No. 25 at 18 (citing Compl. – ECF No. 1 at 5 (¶ 26)).

[90] Opp'n – ECF No. 25 at 18 (citing Compl. – ECF No. 1 at 5 (¶ 26)).

[91] Compl. – ECF No. 1 at 9–11 (¶¶ 54, 60, 62).

United States District Court
Northern District of California

ORDER – No. 19-cv-02414-LB     25

reliance in part because the conclusion that "evaporated cane juice" was healthier than sugar was consistent with the FDA's determination that the "evaporated cane juice" "'falsely suggests that the sweeteners are juice.'"); *see also Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 WL 3804661, at *23 (N.D. Cal. Aug. 13, 2019).

GNC nonetheless contends that the lack of a disclaimer cannot deceive a consumer into making inferences (such as the products are (1) "lawful" products (2) subject to the FDA's pre-market approval and validation process and/or (3) intended to prevent, cure, or treat a disease or health-related condition linked to a disease (meaning, they have therapeutic value)).[92] That contention does not alter the court's conclusion that the plaintiffs' allegations — that they read the therapeutic claims, accepted them as true (especially given claims that suggest medical endorsement of the therapeutic benefits), and would have evaluated the products and claims differently had the label contained a disclaimer — are sufficient. *Cf. Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (under the CLRA and the UCL, to prove reliance on an omission, a plaintiff must prove that had the omitted information been disclosed, "'one would have been aware of it and behaved differently'") (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)); *Tobacco II*, 46 Cal. 4th at 326–28 (an omission is material if a reasonable consumer would attach significance to its existence in determining his choice of action).

GNC's remaining cases do not compel a contrary conclusion. Most involve the plaintiffs' failure to identify the misrepresentations that they relied on, but they differ from the case here, where the plaintiffs link the therapeutic claims to the lack of disclaimer (and the corresponding context to the claims that it would have provided). *See, e.g.*, *Noll v. eBay, Inc.*, 282 F.R.D. 462, 463–64, 468 (N.D. Cal. 2012); *Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2018 WL 1510202 at *6 (N.D. Cal. Mar. 27, 2018); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209 at *4 (N.D. Cal. Feb. 10, 2011); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531 at *7–8 (N.D. Cal. Sep. 1, 2010).

---

[92] Reply – ECF No. 26 at 11 (quoting Opp'n – ECF No. 25 at 18).

In its reply brief, GNC cites *Min Sook Shin v. Umeken, U.S.A., Inc.*, to support its argument that the lack of a disclaimer cannot deceive a consumer.[93] No. SACV 17-00315-CJC(SSx), 2017 WL 6885380 (C.D. Cal. Oct. 25, 2017), *aff'd*, 773 F. App'x 373 (9th Cir. 2019). That case is distinguishable.

The plaintiff in *Umeken* challenged Umeken's marketing of two dietary supplements on its website, in part because the claim of better skin was not borne out by the plaintiff's experience with the products and in part because she alleged that the FDA disclaimer was not "'linked to the structure/function statements with a symbol at the end of each statement'" and was not in boldface type. *Id.* at *2 (citing the complaint). The webpage for each product had "a disclaimer at the end of the product description which [wa]s linked to the last statement by an asterisk," but no asterisk appeared after the precise claim (e.g., "[h]elps you maintain beautiful, firm skin and helps reduce spots from your skin" and "has had the spotlight in Korea and Japan for its positive effects on the skin"). *Id.* at *9. The district court held, "[i]n order for the defective disclaimer to be actionable, the statements Plaintiff points to must make a false or misleading statement on their own that would require a disclaimer to correct." *Id.* The court then dismissed the claim because the plaintiff did not allege why the statements were false, why the cited statements made her believe that the products were endorsed by the FDA, why the statements were false because of a defective disclaimer, or why the absence of an asterisk by the statement made her believe that the product was endorsed by the FDA. *Id.* On appeal, the Ninth Circuit affirmed the dismissal on the ground that the plaintiff did not "describe with the requisite particularity how any defect in Umeken's disclaimers made its other advertising claims misleading[,] . . . which . . . statements misled her to believe that . . . the FDA endorsed Umeken's product, or, indeed how a defect-free disclaimer would have clarified this mistaken belief." 773 F. App'x at 376 (citations and quotation omitted).

The allegations here are different than those in *Umeken*. There, the allegations were conclusory, each product page had the disclaimer, and the plaintiffs did not allege (nor was it apparent) how the defect in the disclaimer made the claims the misleading. By contrast, here, the

---

[93] *Id.* at 11–13.

United States District Court
Northern District of California

plaintiffs allege that the packaging is confusing because there is no accompanying disclaimer on the same panel, and that if there were a disclaimer, it would give a different context to the therapeutic claims such as "Diabetic Support."

In its reply brief, and citing "*e.g.*, ECF No. 1 at ¶[] 68") (which is an image of Women's Ultra Mega Diabetic Support), GNC said that there are asterisks after the alleged structure/function statements that "direct consumers to the disclaimer that '[t]hat these statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.'"[94] Because the plaintiffs did not "acknowledge the asterisks and do not allege that they looked at subject products' packaging to determine where the asterisk linked," GNC contends that they did not plead plausibly that a reasonable consumer would be misled by the packaging.[95]

Preliminarily, the product image is fuzzy, and if there is an asterisk that links to a disclaimer, the court cannot see it easily. The claim in any event is that GNC omits the disclaimer from the front panel and puts a non-compliant disclaimer on the back panel, "where it is rendered non-prominent by a variety of voluntary claims."[96] That fact context is different (again) from *Umeken*, where the tie to the disclaimer was on the same product page, and the plaintiffs did not allege how the alleged defects in the disclaimer rendered the product claim misleading

In sum, the plaintiffs pled fraud sufficiently.

### 3. Fraud Claims Under the New York Consumer Protection Law

In claims five and six, the plaintiffs challenge GNC's deceptive marketing and labeling practices under the New York Consumer Protection Law.[97] GNC moved to dismiss the claims on the same grounds that it advanced in its motion to dismiss the corresponding California claims: the

---

[94] *Id.* at 13 (citing Compl. – ECF No. 1 at 13 (¶ 68).

[95] *Id.*

[96] *Id.*

[97] Compl. – ECF No. 1 at 27–30 (¶¶ 137–152).

plaintiffs did not identify the misleading statements, and no consumer would be misled by the by the lack of the disclaimer.[98] The court denies the motion for the reasons in the previous section.[99]

### 4. Whether the CLRA Claim Requires Dismissal of the UCL and FAL Equitable Claims

GNC moves to dismiss claims one, two, and three (the UCL and FAL claims) on the ground that the CLRA claim provides an adequate legal remedy at law.[100] The plaintiffs counter that most courts do not dismiss claims for equitable relief at the pleadings stage.[101] The court follows the courts in this district that find no bar to the pursuit of alternative remedies at the pleadings stage and denies the motion to dismiss. *See, e.g.*, *Madani v. Volkswagon Group of America, Inc.* No. 17-cv-07287-HSG, 2019 WL 3753433, at *9 (N.D. Cal. Aug. 8, 2019); *Luong v. Subaru of America, Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at * 7 (N.D. Cal. May 2, 2018); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018); *Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 WL 349973, at *3 (N.D. Cal. Aug. 1, 2017).

### 5. Unjust-Enrichment Claim

GNC contends that — because the unjust-enrichment claim (claim seven) is predicated on false or misleading representations — it fails because the plaintiffs have not sufficiently alleged an actionable misrepresentation or omission.[102] Because the court holds that the misrepresentation claims survive, the court denies the motion to dismiss claim seven. *Cf. Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) ("In *Astiana*, for example, the court held the

---

[98] Mot. – ECF No. 18 at 19–21; Reply – ECF No. 36 at 11.

[99] The parties do not dispute that under New York law, the plaintiff does not need to meet Rule 9(b)'s heightened standard for pleading fraud with particularity and instead must meet the Rule 8(a) standard. Mot. – ECF No. 18 at 19–21; Opp'n – ECF No. 25 at 21 (citing *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2nd Cir. 2005); Reply – ECF No. 26 at 10–11 (arguing only the reasonable-consumer test).

[100] Mot. – ECF No. 18 at 18.

[101] Opp'n – ECF No. 25 at 19.

[102] Mot. – ECF No. 18 at 21.

1    plaintiff could state a restitution claim based upon quasi-contract because the plaintiff adequately

2    alleged that the defendant's misleading labels duped the plaintiff into purchasing a product")

3    (citing *Astiana v. Hain Celestial Group*, 783 F.3d 753, 762 (9th Cir. 2015)).

4

5    **6.  Standing to Pursue Injunctive Relief**

6         GNC contends that the plaintiffs lack standing to seek injunctive relief because they (1)

7    alleged that the supplements were "worthless" and (2) now know how to read supplement labels

8    so they will not be harmed in the future.[103] The plaintiffs counter that they also alleged that they

9    would buy the supplements in the future if they could rely on the labels as true.[104] The court denies

10    GNC's motion because the plaintiffs' allegations are sufficient.

11         In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit addressed whether injunctive relief is

12    available to previously deceived customers in injunctive-relief cases. 889 F.3d 956 (9th Cir. 2018).

13    The case involved the advertising and sale of wipes that the plaintiff alleged were labeled (falsely)

14    as flushable. *Id.* at 961. She also alleged that she wanted to buy wipes that were flushable, was

15    unable to tell from the packaging whether the wipes were truly flushable, would not have

16    purchased the wipes (or would have paid less) had she known they were not flushable, and would

17    buy truly flushable wipes in the future (if, before her purchase, she could determine that they were

18    flushable). *Id.* at 962. The Ninth Circuit held that she plausibly pleaded standing to pursue

19    injunctive relief. *Id.* at 966–67. In reaching that conclusion, it held that "a previously deceived

20    consumer may have standing to seek an injunction against false advertising or labeling, even

21    though the consumer now knows or suspects that the advertising was false at the time of the

22    original purchase, because the consumer may suffer an 'actual and immediate, not conjectural or

23    hypothetical' threat of future harm." *Id.* at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S.

24    488, 493 (2009)). But, the court said, "[k]nowledge that the advertisement or label was false in the

25    past does not equate to knowledge that it will remain false in the future. In some cases, the threat

26

27    _____

[103] *Id.* at 21–24.

28    [104] Opp'n – ECF No. 25 at 23–24.

of future harm may be the consumer's plausible allegation that she will be unable to rely on the products' advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70 (citing *Ries v. Ariz. Beverages USA* LLC, 287 F.R.D. 523, 533 (N.D. Cal. 2012) and *Lilly v. Jamba Juice*, NO. 13-cv-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)). In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, and she may reasonably, but incorrectly assume the product was improved." *Id.* at 970 (citation omitted).

The allegations here are similar to those in *Davidson*. Post-*Davidson*, courts in this district have held that similar allegations plausibly plead future harm *See, e.g., Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018) (allegations that the plaintiffs would patronize Chipotle in the future if it had a non-GMO/GMO-free menu); *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (rejecting argument that the plaintiff could read labels in the future to determine whether products were "all natural" and holding that the plaintiff plausibly pleaded future harm by alleging that he would buy food products in the future if they were in fact all natural and that he would be "'hesitant to rely' on Presidio's labeling due to the misrepresentations" that he was challenging in the case). The allegations are sufficient here too. Also, as in *Ries*, the "record is devoid of any grounds to discount plaintiffs' stated intent to purchase in the future, thereby satisfying the requisites for standing." *Ries*, 287 F.R.D. at 533.

GNC's main argument is that this case is different than (for example) *Davidson*, where the wipes were intended to be flushable, because the supplements here were never intended to prevent or treat disease, and the plaintiffs know this now.[106] It contends that the case is more like the "slack fill" cases, where courts have held that the plaintiffs are on notice of potential underfilling and know that they can determine the number of pretzels in a bag by reading the back panel.[107]

---

[106] Mot. – ECF No. 18 at 23.

[107] *Id.* (citation omitted).

*Cordes v. Boulder Brands USA Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323, at *1, 4 (C.D. Cal. Oct. 17, 2018). Or it is like the "no sugar added" case, where the court rejected the injunctive-relief claim because the plaintiff now understood that the phrase "no sugar added" meant just that, not that the apple juice had no sugar at all, and hence could rely on the label going forward.[108] *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024, at *1–3 (N.D. Cal. Sept. 25, 2018).

The slack-fill and "no sugar added" cases do not change the outcome. Those cases are about labels that convey (ultimately) accurate or at least ascertainable information: the number of pretzels, the reality that there is no sugar added, or — in another case cited by GNC — how Atkins counts its net carbohydrates in its food products.[109] *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028, at *1, 15 (S.D. Cal. Jan 3, 2018). By contrast, the labels here claim therapeutic benefit, have misleading phrases, and lack a required disclaimer. Unlike the consumers in GNC's cases, the buyers here cannot rely on the labels on a going-forward basis. Moreover, as discussed above, even if the asterisk links to a disclaimer, the plaintiffs' claim of confusion is predicated on a non-compliant back-panel disclaimer.

In sum, the court denies the motion to dismiss.


## 7. Standing Regarding Unpurchased Products

GNC contends that the plaintiffs do not have standing to assert claims for supplements that they did not purchase.[110] The complaint challenges the lack of a disclaimer on all GNC's dietary supplements, "including but not limited to the five specific products discussed in the Statement."[111] The plaintiffs purchased only four of the five products.[112] The plaintiffs counter that

---

[108] *Id.* (citation omitted).

[109] *Id.* at 23–24 (citation omitted).

[110] *Id.* at 24–25.

[111] *Id.* at 24 (citing Compl. – ECF No. 1 at 2 (¶ 1).

[112] *Id.* at 26 (citing Compl. – ECF No. 1 at 4 (¶ 18), 5 (¶ 25), 6 (¶ 32)).

they have alleged that GNC's products all make structure/function claims and eliminate the required disclaimer.[113]

As the parties know, the court has written extensively on whether plaintiffs have standing to assert claims for products that they have not purchased. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868–72 (N.D. Cal. 2012); *id.*, No. 3:12-cv-04936-LB – ECF No. 37 at 11–14 (N.D. Cal. Apr. 5, 2013); *Brown v. The Hain Celestial,* No. 3:11-03082-LB – ECF No. 104 at 8–13 (N.D. Cal. Dec. 22, 2012). The court's view is that the product composition is not relevant here because the claim is that the labels are misleading as a matter of law based on the lack of the required FDA disclaimer. *See Ang v. Bimbo Bakeries USA Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at * 8 (N.D. Cal. Mar. 13, 2014). At the pleadings stage, the plaintiffs have alleged uniform misrepresentations across product lines. As discussed at the hearing, however, from a case-management perspective, as in *Brown v. The Hain Celestial*, the plaintiffs will have to identify specific products by the class-certification motion. No. 3:11-03082-LB – ECF No. 267 at 14–16 (uniform representations on 326 products at issue).

# CONCLUSION

The court denies the motion to dismiss the complaint. This disposes of ECF No. 18.

**IT IS SO ORDERED.**

Dated: November 15, 2019

_____
LAUREL BEELER
United States Magistrate Judge

---

[113] Opp'n – ECF No. 25 at 25.

ORDER – No. 19-cv-02414-LB                              33